818 So.2d 720 (2002)
STATE of Louisiana
v.
Joseph HAMPTON.
No. 2000-KP-0522.
Supreme Court of Louisiana.
March 22, 2002.
Opinion on Limited Grant of Rehearing June 7, 2002.
*721 Raechelle M. Vix, Counsel for Applicant.
Richard P. Ieyoub, Attorney General, Harry F. Connick, District Attorney, Shana M. Broussard, Shreveport, Edward C. Milner, III, Joseph E. Lucore, New Orleans, Counsel for Respondent.
JOHNSON, Justice.[*]
We granted the defendant's writ application to consider whether he voluntarily waived or suffered a deprivation of his right to testify in his own defense. It is well-settled that a criminal defendant has a constitutional right to testify on his own behalf. However, this right may be waived by a criminal defendant. After considering the record, we find the defendant did not waive his right to testify in his own defense. We therefore reverse the court of appeal's ruling which held that denial of the defendant's right to testify was harmless-error.

FACTS AND PROCEDURAL HISTORY
This case comes before the Court on Joseph Hampton's ("defendant") second writ application. Unlike the first, this application is limited to post-conviction relief alleging denial of the defendant's right to testify. We, nevertheless, find a factual review helpful in examining the defendant's claims.
On June 14, 1992, Ms. Gwendolyn Bannister hosted an outdoor block party in a courtyard of the St. Thomas Housing Development. Mr. Anthony Garrison ("Mr. Garrison") acted as Disc Jockey for the party where, among others, the defendant and Mr. Mark Singer were present. On the evening preceding the party, the defendant *722 and Mr. Durrell Robinson had an argument. On the evening of the party, however, Mr. Garrison brought the defendant and Mr. Robinson together to resolve their differences. Mr. Garrison testified that during the early part of the evening of the party, he saw the defendant and Mr. Robinson shake hands on two occasions. Mr. Garrison also testified that Mr. Robinson told him the matter was "squashed." Nevertheless, Mr. Singer seemingly had problems with such a quick resolution.
The block party ended between 11:30 PM and midnight. Suddenly, as Mr. Garrison was removing his equipment from the front porch of an apartment building, shots rang out. Garrison ducked for cover. He testified that just before the shooting, he saw four or five armed men in an alley across the courtyard. Mr. Garrison recognized Mr. Singer with an assault rifle and the defendant with a handgun. He later testified that he did not see the defendant firing the handgun. He did, however, indicate he saw Mr. Singer firing the assault rifle at Durrell Robinson. Robinson died on the spot.[1]
After the police arrived, they apprehended Mr. Singer. The arresting police officer testified that Mr. Garrison gave a statement, which Ms. Bannister corroborated, describing Mr. Singer as the perpetrator. Although neither witness initially named the defendant, they subsequently did so. Consequently, the defendant and Mr. Singer were both indicted for second degree murder, pursuant to LSA-R.S. § 14:30.1.
In 1993, the Criminal District Court for the Parish of Orleans granted a motion to sever Mr. Singer's and Mr. Hampton's trials.[2] On May 24, 1994, a jury found the defendant guilty as charged. Accordingly, the district court sentenced the defendant to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.
On appeal, the defendant argued the trial court committed a Brady violation[3] by refusing to disclose Ms. Bannister's grand jury testimony because it conflicted with her trial testimony.[4] The court of appeal rejected the defendant's argument. In affirming the trial court, it held that Ms. Bannister's testimony from pre-trial motions was available to the defendant for impeachment purposes and the jury was able to weigh the inconsistencies and make a credibility determination. State v. Hampton, 94-1943 (La.App. 4 Cir. 12/27/96), 686 So.2d 1021. This Court denied *723 writs. State v. Hampton, 97-0166 (La.6/13/97), 695 So.2d 986.
The instant case began with a 1999 motion for post-conviction relief. Defendant filed the motion in Criminal District Court, in accordance with LA.CODE CRIM. PROC. ANN. arts. 924 et seq. He raised two issues for the district court's consideration: (1) the denial of his right to testify (which he did not waive); and (2) ineffective assistance of counsel. The district court granted the motion and ordered a new trial. In its oral reasons for ruling, the court stated:
There is no question that you have the right to testify on your own behalf. There's no question about that. There is no question that your right to testify was in some fashion abridged, that you were not either given an opportunity to testify, or in some ways, you were convinced not to testify in the case.
Transcript of Trial Court's Ruling (7/26/99) at 2 (emphasis added).
The court of appeal granted the State's subsequent writ application and reinstated the lower court's original conviction and sentence. State v. Hampton, 99-2142 (La. App. 4 Cir. 1/18/00), ___ So.2d ___. The Fourth Circuit relied on Nix v. Whiteside, 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986). The court determined that even if the defendant were allowed to testify, his testimony would only have contradicted that of Garrison and Ms. Bannister. Therefore, while the Fourth Circuit acknowledged the applicant wanted to testify and his attorney prevented him from doing so, it nonetheless concluded he was not prejudiced and received a fair trial.
In his ensuing application to this Court, defendant alleges that his court-appointed trial counsel's refusal of his repeated requests to testify violated his constitutional rights. We agree. Therefore, we granted the writ application, 00-0522 (La.1/12/01), 778 So.2d 1148 and now reverse.

LAW AND ANALYSIS

I The Constitutional Right to Testify in One's Own Defense
We begin our analysis by reviewing the United States and Louisiana Constitutions and the relevant federal and state jurisprudence. The United States Supreme Court has recognized a criminal defendant's right to testify is fundamental and personal to the defendant. "Only such basic decisions as to whether to plead guilty, waive a jury, or testify in one's own behalf are ultimately for the accused to make." Wainwright v. Sykes, 433 U.S. 72, 93 n. 1, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (Burger, C.J., concurring) (emphasis added); see also Jones v. Barnes, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983); Brooks v. Tennessee, 406 U.S. 605, 612, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972). Accordingly, the Supreme Court has held "there is no rational justification for prohibiting the sworn testimony of the accused, who above all others may be in a position to meet the prosecution's case." Ferguson v. Georgia, 365 U.S. 570, 582, 81 S.Ct. 756, 5 L.Ed.2d 783 (1961).
Moreover, the U.S. Supreme Court has been unequivocal in holding that the defendant's right to testify is guaranteed by: (1) the Fifth Amendment's privilege against self-incrimination;[5] (2) the Sixth Amendment's Compulsory Process Clause;[6] and (3) the Fourteenth Amendment's *724 Due Process Clause.[7]See generally Rock v. Arkansas, 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987). The Louisiana Constitution also specifically guarantees the defendant the right to testify in his own defense.[8] We, therefore, find it appropriate to first review the federal and state jurisprudence interpreting the aforementioned constitutional provisions.

(A) The United States Constitution's Relevant Provisions

The Fifth Amendment's Privilege Against Self-incrimination
The Fifth Amendment to the United States Constitution encompasses the right to remain silent as well as the right not to do so. "Every criminal defendant is privileged to testify in his own defense, or to refuse to do so." Harris v. New York, 401 U.S. 222, 225, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971) (citations omitted). Furthermore, "[a] defendant's opportunity to conduct his own defense by calling witnesses is incomplete if he may not present himself as a witness. The opportunity to testify is also a necessary corollary to the Fifth Amendment's guarantee against compelled testimony." Rock, 483 U.S. at 52, 107 S.Ct. 2704. Cf. Malloy v. Hogan, 378 U.S. 1, 8, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964) (noting the 5th Amendment's guarantee against self-incrimination, unless the defendant chooses to speak).
The U.S. Court of Appeals for the Eleventh Circuit, in considering the Supreme Court's holding in Rock, held "the Supreme Court has clearly and strongly indicated that the constitutional right to testify should be treated as fundamental." United States v. Teague, 953 F.2d 1525, 1531 (11th Cir.1992) (en banc). Moreover, in expanding upon Rock, the Teague court held:
[u]under the Supreme Court's reasoning in Rock, the right to testify essentially guarantees the right to ultimately choose whether or not to testify.... A criminal defendant clearly cannot be compelled to testify by defense counsel who believes it would be in the defendant's best interest to take the stand. It is only logical, as the Supreme Court has reasoned, that the reverse also be true. A criminal defendant cannot be compelled to remain silent by defense counsel.

Teague, 953 F.2d at 1532 (emphasis added). It is, therefore, well-settled that the Fifth Amendment's privilege against self-incrimination encompasses the personal right to testify in one's defense just as it encompasses the right not to do so.

The Sixth Amendment's Compulsory Process Clause
"The right to testify is also found in the Compulsory Process Clause of the Sixth Amendment, which grants a defendant the right to call `witnesses in his favor,' a right that is guaranteed in the criminal courts of the States by the Fourteenth Amendment." Rock, 483 U.S. at 52, 107 S.Ct. 2704; see also United States v. Valenzuela Bernal, 458 U.S. 858, 867, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982) (quoting U.S. CONST. amend. VI and noting the defendant's right to produce favorable witness testimony).
Logically included in the accused's right to call witnesses whose testimony is `material and favorable to his defense' is a right to testify himself, should he decide it is in his favor to do so. In fact, *725 the most important witness for the defense in many criminal cases is the defendant himself. There is no justification for a rule which denies an accused the opportunity to offer his own testimony.
Rock, 483 U.S. at 52, 107 S.Ct. 2704 (citations omitted) (emphasis added). Therefore, "[the Sixth Amendment] grants to the accused personally the right to make his defense. It is the accused, not counsel, who must be ... accorded compulsory process for obtaining witnesses in his favor." Faretta v. California, 422 U.S. 806, 819, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

The Fourteenth Amendment's Due Process Clause
The right to testify on one's own behalf is one of the rights that is essential to due process in a fair adversary proceeding. See Faretta, 422 U.S. at 819 n. 15, 95 S.Ct. 2525. In interpreting the Due Process Clause, the Supreme Court has held:
[t]he necessary ingredients of the Fourteenth Amendment's guarantee that no one shall be deprived of liberty without due process of law include a right to be heard and offer testimony.
A person's right to reasonable notice of a charge against him and an opportunity to be heard in his defensea right to his day in courtare basic in our system of jurisprudence; and these rights include, as a minimum, a right to examine the witnesses against him, to offer testimony, and to be represented by counsel.
Rock, 483 U.S. at 51, 107 S.Ct. 2704 (citations omitted) (emphasis added). Thus, "[t]his right [to offer testimony] reaches beyond the criminal trial: the procedural due process constitutionally required in some extrajudicial proceedings includes the right of the affected person to testify." Id. (citing Gagnon v. Scarpelli, 411 U.S. 778, 782, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); Morrissey v. Brewer, 408 U.S. 471, 489, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); Goldberg v. Kelly, 397 U.S. 254, 269, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)).

(B) Jurisprudence after Rock v. Arkansas

After Rock, the U.S. Circuit Courts have almost uniformly held a defendant's right to testify is personal and can only be waived by the defendant and not his attorney. See, e.g., Brown v. Artuz, 124 F.3d 73, 77 (2d Cir.1997); United States v. Pennycooke, 65 F.3d 9, 10-11 (3d Cir.1995); United States v. McMeans, 927 F.2d 162, 163 (4th Cir.1991); Jordan v. Hargett, 34 F.3d 310, 312 (5th Cir.1994), vacated on other grounds, 53 F.3d 94 (5th Cir.1995) (en banc); Rogers-Bey v. Lane, 896 F.2d 279, 283 (7th Cir.1990); United States v. Bernloehr, 833 F.2d 749, 751 (8th Cir. 1987); United States v. Joelson, 7 F.3d 174, 177 (9th Cir.1993); United States v. Teague, 953 F.2d 1525 (11th Cir.1992) (en banc); United States v. Ortiz, 82 F.3d 1066, 1070 (D.C.Cir.1996); see also Lema v. United States, 987 F.2d 48, 52 (1st Cir. 1993).
Furthermore, in considering the importance of a defendant's constitutional rights, several of our sister states have placed the onus of protecting the criminal defendant's right to testify on the court. See, e.g., State v. Neuman, 179 W.Va. 580, 371 S.E.2d 77, 81-82 (1988); People v. Curtis, 681 P.2d 504, 514 (Colo.1984); Culberson v. State, 412 So.2d 1184, 1186-87 (Miss. 1982).
Although the issue is res nova in this court, Louisiana courts of appeal have respected the defendant's right to present his own defense. See, e.g., State v. Woodfin, 539 So.2d 645 (La.App. 2 Cir.1989) (remanding to the district court to allow the introduction of hypnotically refreshed *726 testimony because of the defendant's constitutional rights); State v. Holden, 554 So.2d 121 (La.App. 2 Cir.1989) (reversing a district court's conviction because the court refused to admit the defendant's refreshed testimony after memory loss); State v. Johnson, 482 So.2d 146 (La.App. 4 Cir.1986) (reversing a district court's conviction because defense counsel refused to allow the accused to testify although he made an outburst in court, indicating his desire to do so). We find this line of jurisprudence persuasive.

II Applying the Constitutional and Jurisprudential Standards to the Facts
Using the forgoing constitutional and jurisprudential framework, we now turn to an examination of the facts and circumstances of the instant case. In the post-conviction hearing, the district court considered the following testimony by Charles Lane, the defendant's court-appointed trial counsel:
Q: During the course of the trial, had you discussed Mr. Joseph Hampton testifying on his own behalf?
A: Yes. We had a discussion very shortly before the trial ended. Yes.
Q: Had you had those same discussions before the trial?
A: Yes. We had discussed Mr. Hampton's testimony and his recollection of what happened on numerous occasions.
Q: And had he indicated to you whether or not he wished to testify at trial.
A: From day one Mr. Hampton told me he wanted to tell his story.
Q: As to the best of your recollection, was that matter discussed previous to the defense resting?
A: Yes.
Q: Did he testify at trial?
A: No.
Q: And to the best of your recollection, whose decision was [it] that he not testify?
A: I told him that I controlled that decision.
Q: When you told him that, what preceded you telling him that you controlled the decision?
A: Well, I made a mistake, in that, for some reason, at that particular moment in time. I thought that counsel controlled the witnesses. After I made the statement, in probably 20 minutes or at least within an hour, I realized I had made a mistake. And then I think it was the next day that I brought that to the OIDP office's attention.
Q: Did you have any reason to believe that Mr. Hampton would perjure himself when he took the stand?
A: I had noI had nothingnone of the investigation[s] nor the discovery that I had done would indicate that Mr. Hampton was going to perjure himself.
Transcript of Post-Conviction Relief Hearing (03/05/99) at 3 4 (emphasis added). Therefore, when we consider the facts, circumstances and controlling jurisprudence, we conclude the defendant's rights were clearly violated and the court of appeal erred in holding otherwise.
The trial court unequivocally held the defendant's constitutional rights were violated when he was prevented from testifying. See Transcript of Post-Conviction Relief Hearing (07/26/99) at 2. We believe the court was correct in granting a new trial on that basis. As this Court previously indicated, "[n]o matter how daunting the task, the accused ... has the right to *727 face jurors and address them directly without regard to the probabilities of success. As with the right to self-representation, denial of the accused's right to testify is not amenable to harmless-error analysis." State v. Dauzart, 99-3471 (La.10/30/00), 769 So.2d 1206, 1210 (emphasis added). Therefore, we find the trial court was correct in granting defendant post-conviction relief because he had a constitutional right to testify in his own defense.
In reversing the trial court's post-conviction relief, the court of appeal relied on Nix v. Whiteside, 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986). We find such reliance to be misplaced. In Nix, an ineffective assistance of counsel case, the issue was whether a criminal defendant's Sixth Amendment right to counsel was violated when his attorney refused to cooperate after the defendant made known his intention to offer perjured testimony. Defense counsel testified:
[W]e could not allow him to [testify falsely] because that would be perjury, and as officers of the court we would be suborning perjury if we allowed him to do it ... I advised him that if he did do that it would be my duty to advise the court of what he was doing and that I felt he was committing perjury.
Id. at 161, 106 S.Ct. 988. In the case sub judice, there was no indication the defendant wanted to perjure himself. See Transcript of Post-Conviction Relief Hearing (03/05/99) at 3-4. Therefore, Nix is inapplicable. It can only be applied to situations where a defendant intends to offer perjured testimony.

Developing a Reasonable Standard for Louisiana
While we believe the Constitution and jurisprudence are well-settled in that a criminal defendant is guaranteed the right to testify in his own defense, we also believe a broad-based ruling has the potential of opening the flood gates for post-conviction relief petitions in virtually every case where the defendant did not testify. Our intention is to narrow the reach of the case sub judice and prevent frivolous claims. To do so, we find it prudent to establish some criteria to aid the trial courts in determining whether a defendant has waived his right to testify or simply chose not to do so for strategic purpose.
In addressing the issue of whether denial of a criminal defendant's right to testify a right that is fundamental in nature is subject to harmless-error analysis, we find the U.S. Supreme Court's logic in Arizona v. Fulminante, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) persuasive. The case addresses the issue of whether harmless-error analysis is appropriate for "structural defects" or "trial errors."[9]
In Fulminante, the defendant informed the Mesa, Arizona police department that his stepdaughter was missing. After a two-day search, her body was found. Fulminante made several inconsistent statements concerning his relationship with his stepdaughter and her disappearance. Consequently, he became a suspect in her *728 murder. When no charges were filed against him, however, he left Arizona for New Jersey. There, he was convicted on unrelated federal charges. See id. at 282, 111 S.Ct. 1246.
During his incarceration, Fulminante befriended another inmate who was actually a paid, Federal Bureau of Investigations undercover informant. After rumor spread about Fulminante's alleged murder of his minor stepdaughter, he became the target of widespread violence from fellow inmates. Consequently, the informant offered to protect Fulminante if he told the truth about his stepdaughter's death. Fulminante accepted the offer and confessed intimate details about the child's death. He was subsequently indicted in Arizona for the child's murder. See id. at 283, 111 S.Ct. 1246.
After the State moved to introduce evidence of the confession, defendant moved to suppress, alleging it was illegally coerced. The district court rejected defendant's argument and sentenced him to death. The Arizona Supreme Court, however, reversed. The court found that although the confession was coerced and not admissible, it determined the admission of the confession was subject to harmless-error analysis because of the overwhelming evidence against Fulminante. See id. at 283-84, 111 S.Ct. 1246. The U.S. Supreme Court affirmed the Arizona court's ruling, but differed on the application of harmless-error analysis. It is that logic in which we find merit.
The Fulminante Court noted:
[a] confession is like no other evidence. Indeed, `the defendant's own confession is probably the most probative and damaging evidence against him.... The admissions of a defendant come from the actor himself, the most knowledgeable and impeachable source of information about his past conduct. Certainly, confessions have profound impact on the jury, so much so that we may justifiably doubt its ability to put them out of mind, even if told to do so.
Id. at 296, 111 S.Ct. 1246 (citations omitted). As such, the Court placed great weight on the defendant's confession because it came from the defendant's own mouth. "[C]ertain constitutional rights are not, and should not be, subject to harmless-error analysis because those rights protect important values that are unrelated to the truth-seeking function of the trial." Id. at 295, 111 S.Ct. 1246 (quoting Rose v. Clark, 478 U.S. 570, 587, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986) (Stevens, J., concurring)).
The Fulminante Court found fundamental fairness dictated that coerced confessions are not amenable to harmless-error analysis because of the great impact the jury places on statements made by the accused. "A defendant's confession is probably the most probative and damaging evidence that can be admitted against him, so damaging that a jury should not be expected to ignore it even if told to do so." Id. at 292, 111 S.Ct. 1246 (citations omitted). Therefore, in applying the same logic the U.S. Supreme Court used in Rock v. Arkansas and Arizona v. Fulminante, and the same logic the Eleventh Circuit used in U.S. v. Teauge, denial of a fundamental right guaranteed by the Constitution cannot be subject to harmless-error analysis. The defendant cannot be denied an opportunity to call himselfthe most powerful witness to testify on his behalf.
As Rock observed, a defendant's right to testify on his own behalf is a necessary corollary of his Sixth Amendment right to compulsory process because "the most important witness for the defense in many criminal cases is the defendant himself." Rock, 483 U.S. at 52, 107 *729 S.Ct. 2704. Rock thus spoke of the right to testify as among those rights that "`are essential to due process of law in a fair adversary process.'" Id., at 51, 107 S.Ct. 2704 (quoting Faretta v. California, 422 U.S. 806, 819 n. 15, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (emphasis added)). Therefore, such language unmistakably places the defendant's right to testify among those protections without which a criminal trial is "structurally flawed."
In the case sub judice, the record clearly indicates the defendant wished to testify. In addition to the forgoing testimonial excerpts, the defendant's court-appointed trial counsel indicated the following at the post-conviction relief hearing:
[F]rom my recollection of what happened at trial and when I read the record this kind of happened simultaneously. He was pulling my coat. And he askedI mean, he definitely said he wanted to testify. And I saidused a word of profanity and said no, that he wasn't, and that I controlled it. And then we went on with the case.
Transcript of Post-Conviction Relief Hearing (03/05/99) at 14 (emphasis added). Moreover, the defendant's trial counsel unequivocally testified that he erred in usurping the defendant's decision-making power. See id. Therefore, denial of this fundamental right is, in the Fulminante Court's terms, a "structural defect" and much more than mere "trial error."
We rely on our holding in State v. Dauzart, supra. In Dauzart, we reversed the defendant's convictions and sentence because the trial court prevented the defendant from testifying. The trial court did so, as a matter of procedure, simply because the defense had already rested its case before the defendant made known his desire to testify. In evaluating the court's actions, we held "denial of the accused's right to testify is not amenable to harmless-error analysis. The right `is either respected or denied; its deprivation cannot be harmless.'" Dauzart, 769 So.2d at 1210-11 (citing McKaskle v. Wiggins, 465 U.S. 168, 177 n. 8, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984)) (emphasis added). It is of no consequence that in Dauzart, the court prevented the defendant from testifying and here the defendant's lawyer prevented him from doing so. Denial of the right to testify is not amenable to harmless-error. See id. Therefore, we hold that whenever a defendant is prevented from testifying, after unequivocally expressing his desire to do so, the defendant has been denied a fundamental right and suffers detrimental prejudice.
In determining whether a defendant's right to testify was violated or waived by his silence during trial, we can look to Passos-Paternina v. United States, 12 F.Supp.2d 231 (D.P.R.1998), for guidance. As a guideline, the Passos-Paternina court held:
(1) absent extraordinary circumstances that should alert the trial court to a conflict between attorney and client, the court should not inquire into a criminal defendant's right to testify. The court should assume, that a criminal defendant, by not `attempting to take the stand,' has knowingly and voluntarily waived his right;
(2) the court must consider whether the petitioner has waived his right to testify.... [The defendant can only] rebut that presumption ... by showing that his attorney caused him to forego his right to testify [ (a) by alleging specific facts, including an affidavit by the defendant's trial counsel] from which the court could reasonably find that trial counsel `told [the defendant] that he was legally forbidden to testify or in some similar way compelled him to remain silent ... `[(b) by demonstrating from *730 the record] that those `specific factual allegations would be credible ...'
Id. at 239-40 (citations omitted). We find this framework persuasive. Passos-Paternina also lists a third factor for consideration.[10] However, because the third factor employs a harmless-error analysis to denial of a fundamental right, we decline to adopt it from the Puerto Rico District Court. The jurisprudence of both the U.S. Supreme Court and this Court is well-settled in that denial of a fundamental right is not amenable to harmless-error. See McKaskle v. Wiggins, 465 U.S. at 177 n. 8, 104 S.Ct. 944; Fulminante, 499 U.S. at 302, 111 S.Ct. 1246; State v. Dauzart, 769 So.2d at 1210.
We believe the facts of this case fall within the narrow class created by the two criterion adopted from Passos-Paternina and this Court's previous holding in Dauzart. Moreover, such criteria is in line with fundamental constitutional rights and fairness in a criminal proceeding. Accordingly, the court of appeal's holding must be reversed. Denial of a criminal defendant's right to testify, after he unequivocally makes known his desire to do so, simply cannot be amenable to harmless-error. See Dauzart, supra; see also U.S. v. Butts, 630 F.Supp. 1145, 1148 (D.Me.1986) (holding "[t]his Court considers a defendant's right to testify in a criminal proceeding against him so basic to a fair trial that its infraction can never be treated as harmless-error....") (emphasis added).

CONCLUSION AND DECREE
For the forgoing reasons, we REVERSE the decision of the court of appeal and REINSTATE the trial court's grant of the defendant's post-conviction relief petition. This case is REMANDED to the district court for action consistent with this opinion.
VICTORY, J., concurring.
I concur in the result. Our court recently held that the denial of the defendant's right to testify is not subject to harmless error analysis. State v. Dauzart, 99-3471 (La.10/30/00), 769 So.2d 1206. Trial judges may be able to avoid problems in this area by having the defendant (out of the jury's presence in jury cases) make his choice of whether or not to testify at trial on the record, after explaining this right to the defendant.
VICTORY, J., concurs in the result with reasons.
KNOLL, J., dissents and assigns reasons.
LOBRANO, J., dissents and assigns reasons.
TRAYLOR, J., dissents for reasons assigned by KNOLL, J.
KNOLL, J., dissenting.
Although I agree with our holding in State v. Dauzart, 99-3471 (La.10/30/00), 769 So.2d 1206, I find it factually distinguishable. Unlike the defendant in Dauzart whose right to testify was denied by the trial court, the defendant in the present case contends that it was his trial *731 counsel who would not let him testify. Under these facts, I find that the appropriate procedural vehicle to test a defendant's claim that his defense counsel violated his right to testify is a claim in post-convicting relief for ineffective assistance of counsel subject to the two-prong analysis enunciated in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984). See United States v. Teague, 953 F.2d 1525 (11th Cir. 1992), cert denied, 506 U.S. 842, 113 S.Ct. 127 (1992).
In Strickland, the U.S. Supreme Court delineated two requirements for a claim of ineffective assistance of counsel: First, the defendant must show that trial counsel's performance was deficient. This requires a showing that counsel erred so seriously that counsel was not functioning as the "counsel" which the Sixth Amendment guarantees. Second, the defendant must show that the deficient performance prejudiced the defense. This requires a showing that counsel's error(s) were so serious as to deprive the defendant of a fair trial a trial whose result is reliable.
Unlike the situation in Dauzart, I find that the decision of whether the defendant will testify is essentially strategic and is best delegated to defense counsel. See Wright v. Estelle, 572 F.2d 1071, 1073 (5th Cir.), cert. denied, 439 U.S. 1004, 99 S.Ct. 617 (1978) (Thornberry, Clark, Roney, Gee, Hill, J.J., specially concurring). Although the record indicates that the defense counsel in some way abridged the defendant's right to testify,[1] I am not convinced that this deficiency resulted in a trial which produced unreliable results, the second essential prong of Strickland.
In its adoption of a rationale that the denial of the accused's right to testify, even under the present facts, is not amenable to harmless error analysis, I find that the majority opens a Pandora's box that will invariably lead to Monday morning quarterbacking on strategic decisions not to have the defendant testify. It is well recognized that significant legal risks are raised when a defendant chooses to testify. See United States v. Sharif, 893 F.2d 1212, 1214 (11th Cir. 1990) (holding that "[w]hen the defendant elects to testify, he runs the risk that if disbelieved, the trier of fact may conclude that the opposite of his testimony is the truth"); United States v. Bennett, 848 F.2d 1134, 1139 (11th Cir 1988) (finding that the jury may view the defendant's false explanatory statement as substantive evidence proving guilt); Untied States v. Eley, 723 F.2d 1522, 1525 (11th Cir. 1984) (same). Moreover, the majority opinion ignores the well established principle that "[judicial scrutiny of counsel's performance must be highly deferential]." Strickland, 466 U.S. at 694, 104 S.Ct. 2052. When this principal is applied to the strategic trial decision on who will or will not be called to testify, I find that the majority errs when it inappropriately *732 extends our holding in Dauzart to a factual scenario that was never intended.
For these reasons, I respectfully dissent from the majority opinion.
LOBRANO, Justice Pro Tempore, Dissenting.
At best, the holding of State v. Dauzart, 99-3471 (La.10/30/00), 769 So.2d 1206 should be limited to its particular facts. The very broad statement that "[t]he right [to testify] is either respected or denied; its deprivation cannot be harmless error," id. at 1210-11 (citing McKaskle v. Wiggins, 465 U.S. 168, 177 n. 8, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984)), should not be applied to this case and the majority's reliance on that statement is error regardless of whether the issue is considered one of ineffective counsel or deprivation of the right to testify.
In Dauzart, the trial judge refused to reopen the case so that defendant could testify after defendant had rested despite the protestations of both defendant and his attorney. In the present case, defendant's attorney made the strategical decision to not allow defendant to testify. On defendant's post-conviction application, he argues both ineffective assistance of counsel and denial of his personal right to testify. At the post-conviction hearing, his former trial attorney testified as to the reasons why he made the decision not to allow defendant to testify and admitted that he made a mistake by telling defendant that "I controlled that decision." Undoubtedly, counsel's statement to his client was incorrect and amounts to a deficient performance under the first prong of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). However, after considering what defendant would have said had he testified, the court of appeal determined that his testimony would have been cumulative and would not have affected the outcome of the trial. I believe that analysis is correct and the majority's reliance on the "blanket statement" in Dauzart is inappropriate within the context of this case.

ON APPLICATION FOR REHEARING
PER CURIAM.
Rehearing granted for the sole purpose of correcting a non-dispositive reference to language in Arizona v. Fulminante, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). At page 12 of the original opinion, we incorrectly described the Fulminante court majority's holding to be that the erroneous admission into evidence of a coerced confession is not subject to harmless error analysis. However, a majority of the Fulminante court, as set forth in Part II of the opinion of the Chief Justice, 499 U.S. at 306-12, 111 S.Ct. at 1263-66, 113 L.Ed.2d at 329-33, concluded that the harmless error rule is applicable to the admission of an involuntary confession.
Although we hereby correct our original opinion in this regard, it does not affect the holding of our original opinion, because we did not rely on any particular holding of the Fulminante majority. Instead, we relied on our prior decision in State v. Dauzart, 99-3471 (La.10/30/00), 769 So.2d 1206, in which we held that the deprivation of the right to testify is not amenable to harmless error analysis. In our original opinion, we thus concluded that, "whenever a defendant is prevented from testifying, after unequivocally expressing his desire to do so, the defendant has been denied a fundamental right and suffers detrimental prejudice." State v. Hampton, 00-0522, p. 14 (La.3/22/02), 818 So.2d 720, 729, 2002 La. LEXIS 720, *26. We also adopted two of the factors set forth in Passos Paternina *733 v. United States, 12 F.Supp.2d 231 (D.Puerto Rico 1998), aff'd, 201 F.3d 428 (1st Cir.1999), to determine whether a defendant was compelled to forego his right to testify. Id. at 14, 818 So.2d at 729, 2002 La. LEXIS 720, *26-27. With this in mind, we reiterate the holding of our original opinion that the denial of a defendant's right to testify, after he unequivocally makes known his desire to exercise that right, is not amenable to harmless error analysis. Id. at 15, 818 So.2d at 730, 2002 La. LEXIS 720, *28.
TRAYLOR, J. and KNOLL, J., would grant rehearing.
WEIMER, J., concurs in denial of rehearing for reasons assigned.
WEIMER, J., concurring.
I concur in the denial of the rehearing in this matter for the following reasons.
I agree with Justice Knoll's dissent that this court's holding in State v. Dauzart, 99-3471 (La. 10/30/00), 769 So.2d 1206, is distinguishable from this matter and her concern about opening a Pandora's box. I also agree that the analysis enunciated in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), should be applied because in the present case it was the defendant's former trial counsel, as opposed to the trial court, who would not allow the defendant to testify. Thus, Dauzart should be limited to its particular facts.
I also agree with Justice pro tempore Lobrano that the defendant's former trial counsel admitted he made a mistake by telling the defendant that "I controlled that decision (regarding whether the defendant should testify)." As such, counsel's statement was in error and is thus deficient performance under the first prong of Strickland. However, contrary to Justice pro tempore Lobrano's opinion, I believe the defendant's testimony would not have been merely cumulative in this fact intensive case.
Thus, I believe the result reached by the majority was correct. However, I would apply a different analysis to reach that result.
NOTES
[*] Retired Judge Robert L. Lobrano, assigned as Associate Justice Pro Tempore, participating in the decision.
[1] The pathologist who performed the victim's autopsy testified that he could not determine what type of gun killed the victim.
[2] On October 6, 1993, Mr. Singer was tried and convicted. The court of appeal affirmed. State v. Singer, 94-0953 (La.App. 4 Cir. 6/29/95), 656 So.2d 310.
[3] See generally Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
[4] In federal jurisprudence, it is well-settled that the secrecy of grand jury testimony is not absolute. See, e.g., Dennis v. U.S., 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966) (holding that district court abused its discretion in not ordering the disclosure of grand jury testimony where the witnesses' grand jury and trial testimonies were inconsistent). Moreover, if a witness appears before a grand jury and later testifies at trial, "the minutes of the grand jury testimony relating to the subjects about which the witnesses testified will `be made available to the defendant for impeachment purposes after a witness has testified against him at trial.'" In re Grand Jury Testimony, 1980 U.S. Dist. LEXIS 13432 (S.D.N.Y.1980) (quoting United States v. Youngblood, 379 F.2d 365, 369 (2d Cir.1967)); see also U.S. v. Moten, 582 F.2d 654, 663 (2d Cir.1978); U.S. v. Ayers, 426 F.2d 524, 529 (2d Cir.1970), cert. denied, 400 U.S. 842, 91 S.Ct. 85, 27 L.Ed.2d 78 (1970).
[5] "[N]or shall [any person] be compelled in any criminal case to be a witness against himself ..." U.S. CONST. amend. V.
[6] "In all criminal prosecutions, the accused shall enjoy the right to ... have compulsory process for obtaining witnesses in his favor..." U.S. CONST. amend. VI.
[7] "[N]or shall any state deprive any person of life, liberty, or property, without due process of law ..." U.S. CONST. amend. XIV.
[8] "[A]n accused is entitled ... to testify in his own behalf." LA. CONST. art. I, § 16.
[9] The Fulminante Court distinguished between trial errors, which are amenable to harmless-error analysis, and structural defects to which harmless-error analysis is inapplicable. Trial errors may include: (1) a misstated jury instruction; (2) restriction of a defendant's right to cross-examine a witness for bias; (3) failure to instruct the jury on the presumption of innocence et seq. See generally Arizona v. Fulminante, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). Such errors are obviously different from structural defects, which address the denial of fundamental rights as guaranteed by the U.S. and Louisiana Constitutions.
[10] (3) if the petitioner successfully rebuts the presumption that, by his silence, he knowingly and voluntarily waived his right to testify, the court must analyze his claim as one of constitutional trial error (as opposed to structural defect requiring automatic reversal of the conviction) and apply harmless-error analysis.... [Under which] the petitioner can proffer the testimony he was allegedly prevented from giving at trial, and the habeas court can determine, based on the other evidence, what effect the denial had on the outcome of the trial.

Passos-Paternina, 12 F.Supp.2d at 239-40 (citations omitted).
[1] Although historically criminal defendants were prohibited from testifying because of their interest in the outcome of the trial, that view has long been abandoned. See Faretta v. California, 422 U.S. 806, 819 n 15 (1975)(holding that "it is now accepted ... that an accused has a right ... to testify on his own behalf."); see also TIMONY P. O'NEIL, VINDICATING THE DEFENDANT'S CONSTITUTIONAL RIGHT TO TESTIFY AT CRIMINAL TRIAL: THE NEED FOR AN ON-THE-RECORD WAIVER, 51 U.PITT.L.REV. 809 (1990). Pursuant to that right to testify, the American Bar Association's Standards for Criminal Justice provide that three decisions relating to the conduct of the case are to be made by the accused after full consultation with counsel, namely, what plea to enter, whether to waive a jury trial, and whether to testify on his or her own behalf. 1 Standards of Criminal Justice Standard 4-5.2(a)(2d edition 1980). As noted in Strickland, the "prevailing norms of practice as reflected in American Bar Association standards and the like are guides to determining what is reasonable" representation by an attorney. Strickland, 466 U.S. at 688.