# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                    NEWS RELEASE #009

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **6th day of March, 2026** are as follows:

**BY Griffin, J.:**

2025-KP-00209          STATE OF LOUISIANA    VS.    JARVIS TURNER (Parish of Orleans Criminal)

REVERSED AND REMANDED. SEE OPINION.

Weimer, C.J., additionally concurs and assigns reasons.
McCallum, J., concurs for the reasons assigned by Penzato, J.
Cole, J., concurs for the reasons assigned by Penzato, J.
Penzato, J., concurs and assigns reasons.

*On Writ of Certiorari to the Court of Appeal, Fourth Circuit, Parish of Orleans Criminal*

**GRIFFIN, J.***

We granted this writ to reexamine whether defense counsel preventing a defendant from testifying constitutes structural error requiring automatic reversal. Applying United States Supreme Court jurisprudence, we distinguish between such error occurring on direct or collateral review – the former resulting in automatic reversal and the latter requiring a showing of constitutionally deficient performance by defense counsel and resulting prejudice to the defendant.

## FACTS AND PROCEDURAL HISTORY

Defendant was convicted of armed robbery, which was affirmed on appeal. *State v. Turner*, 08-0734 (La. App. 4 Cir. 12/17/08), 997 So.2d 906. He subsequently filed the instant collateral attack on his conviction, claiming ineffective assistance of counsel and that his defense counsel prevented him from testifying. At a hearing on his post-conviction claims, defendant produced several affidavits but failed to provide testimony or an affidavit from his trial counsel substantiating his claims.

The trial court granted the defendant's application for post-conviction relief, finding structural error in defense counsel prohibiting him from testifying and that

---

* Judge Allison H. Penzato of the Court of Appeal, First Circuit, appointed as Justice pro tempore, sitting for the vacancy in the First District.

such structural error required automatic reversal of his conviction. Relying on this Court's opinion in *State v. Hampton*, 00-0522 (La. 3/22/02), 818 So. 2d 720, the court of appeal reversed, finding that such collateral attacks must be accompanied by testimony or an affidavit from defense counsel acknowledging they prevented the defendant from testifying. *State v. Turner*, 2024-0733 (La. App. 4 Cir. 1/15/25), 421 So. 3d 67. Defendant's writ application to this Court followed, which we granted. *State v. Turner*, 2025-0209 (La. 10/14/25), 420 So. 3d 679.

## DISCUSSION

The issue before this Court is whether the trial court properly granted post-conviction relief. A trial court's factual findings, based on the weight of the evidence and the credibility of witnesses are reviewed for abuse of discretion. These findings will not be overturned unless there is no evidence to support them. *State v. Thompson*, 11-0915, pp. 13-14 (La. 5/8/12), 93 So.3d 553, 563. A trial court's legal conclusions are subject to *de novo* review. *Id*. The instant matter presents a question of law.

A defendant's right to testify is protected by various provisions of the federal constitution, such as the Fifth, Sixth, and Fourteenth Amendments. *Rock v. Arkansas*, 483 U.S. 44, 51-53 (1987).[1] The United States Supreme Court has held that there are two types of constitutional errors in criminal matters: structural errors, which typically require automatic reversal; and trial errors, which are subject to harmless error review – requiring the state to prove beyond a reasonable doubt that the error was harmless. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 148 (2006); *Neder v. United States*, 527 U.S. 1, 8 (1999); *State v. Burton*, 19-1079, p. 8-9 (La. 6/30/21), 320 So. 3d 1117, 1123-24.  However, when a defendant alleges ineffective assistance of counsel, the defendant must meet the burden

---

[1] As the case comes to this Court, the defendant makes no argument predicated on Article I § 16 of the Louisiana Constitution being broader than the right afforded by the United States Constitution. We, therefore, confine our analysis to the federal constitution and the decisions interpreting that document.

created by *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a defendant show that defense counsel was constitutionally ineffective and that the defendant suffered prejudice because of the attorney's ineffective performance.

The issue in this matter implicates all three standards. Defendant brought an ineffective assistance of counsel claim and argues that his counsel denied his right to testify at trial. Thus, he is alleging counsel error typical of a *Strickland* claim. He also claims that because his right to testify is structural in nature, as per this Court's decision in *Hampton*, it is not subject to either *Strickland* or harmless error review. The State counters that this Court should reverse *Hampton* entirely, find that denial of the right to testify in this matter is not structural error, and find that defendant's claims are subject to either *Strickland* or harmless error. Most courts have applied *Strickland* to claims where defendants allege that trial counsel prevented them from testifying.[2] Some courts have applied harmless error.[3] Still others, including this Court in *Hampton*, have found structural error and required automatic reversal on collateral review.[4]

We adopt the majority approach and overrule *Hampton* to the extent that we now hold where a defendant is on collateral review and alleges defense counsel's conduct resulted in structural error, such a post-conviction claim is reviewed under

---

[2] *Hartsfield v. Dorethy*, 949 F.3d 307, 312-313 (7th Cir. 2020) (collecting federal cases and holding that on collateral review, *Strickland* applied to situations where trial counsel prevented defendant from testifying). State court cases reaching similar results include: *State v. Iromuanya*, 806 N.W.2d 404, 421-23 (Neb. 2011); *Johnson v. State*, 169 S.W.3d 223, 235-239 (Tex. Crim. App. 2005); *State v. Franklin*, 89 S.W.3d 865, 867–69 (Ark. 2002); *Washington v. State*, 800 So. 2d 1140, 1145-46 (Miss. 2001); *Brennan v. Vose*, 764 A.2d 168, 171 (R.I. 2001); *State v. Bey*, 736 A.2d 469, 488-89 (N.J. 1999); *State v. Robinson*, 982 P.2d 590, 597-98 (Wash. 1999); *State v. Arguelles*, 921 P.2d 439, 440-42, 441 n.3 (Utah 1996); *Oisorio v. State*, 676 So. 2d 1363, 1364-65 (Fla. 1996); *People v. Naranjo*, 840 P.2d 319, 323-24 (Colo. 1992).

[3] *State v. Nelson*, 849 N.W.2d 317, 327 (Wis. 2014); *People v. Allen*, 187 P.3d 1018, 1038–39 (Cal. 2008); *Quarels v. Commonwealth*, 142 S.W.3d 73, 82 (Ky. 2004); *Momon v. State*, 18 S.W.3d 152, 166-67 (Tenn. 1999), *on reh'g* (2000); *Tachibana v. State*, 900 P.2d 1293, 1307 (Haw. 1995); *Sanchez v. State*, 841 P.2d 85, 88–89 (Wyo. 1992); *LaVigne v. State*, 812 P.2d 217, 221-222 (Alaska 1991).

[4] *Hampton*, 00-522, 818 So. 2d 720; *United States v. Butts*, 630 F. Supp. 1145, 1149 (D. Me. 1986); *State v. Rosillo*, 281 N.W.2d 877, 879 (Minn. 1979).

*Strickland*. *Hampton* is further overruled to the extent we hold substantiating evidence exclusively from defense counsel is not required.

Resolution of this matter is guided by *Weaver v. Massachusetts*, 582 U.S. 286 (2017), in which the United States Supreme Court announced three classifications for determining whether a constitutional violation amounts to a structural error:

> First, an error has been deemed structural in some instances if the right at issue is not designed to protect the defendant from erroneous conviction but instead protects some other interest. This is true of the defendant's right to conduct his own defense, which, when exercised, usually increases the likelihood of a trial outcome unfavorable to the defendant. That right is based on the fundamental legal principle that a defendant must be allowed to make his own choices about the proper way to protect his own liberty. Because harm is irrelevant to the basis underlying the right, the Court has deemed a violation of that right structural error.
>
> Second, an error has been deemed structural if the effects of the error are simply too hard to measure. For example, when a defendant is denied the right to select his or her own attorney, the precise effect of the violation cannot be ascertained. Because the government will, as a result, find it almost impossible to show that the error was harmless beyond a reasonable doubt, the efficiency costs of letting the government try to make the showing are unjustified.
>
> Third, an error has been deemed structural if the error always results in fundamental unfairness. For example, if an indigent defendant is denied an attorney or if the judge fails to give a reasonable-doubt instruction, the resulting trial is always a fundamentally unfair one. It therefore would be futile for the government to try to show harmlessness.

*Weaver*, 582 U.S. at 295-296 (internal citations and quotations omitted).

The first classification supports the defendant's assertion that denial of his right to testify by defense counsel in his own defense is a structural error, as it goes to the heart of "the fundamental legal principle that a defendant must be allowed to make his own choices about the proper way to protect his own liberty." *Id*. The United States Supreme Court has stated that the right to testify in one's own defense was even "more fundamental to a personal defense than the right to self-representation…A defendant's opportunity to conduct his own defense by calling

witnesses is incomplete if he may not present himself as a witness." *Rock*, 483 U.S. at 52. Violations of this less fundamental right have already been held to be structural errors, requiring automatic reversal. *McKaskle v. Wiggins*, 465 U.S. 168, 177, n. 8 (1984). It follows that violations of the right to testify in one's own defense are structural errors regardless of whether they are caused by the trial court or defense counsel.

However, we disagree with the defendant that finding structural error ends our inquiry. The United States Supreme Court in *Weaver* found structural error, but applied *Strickland* nonetheless. Finding structural error is not "talismanic," but "means only that the government is not entitled to deprive the defendant of a new trial by showing the error was harmless beyond a reasonable doubt." *Weaver*, 582 U.S. at 299. Thus, automatic reversal may still be required where structural errors are raised on direct review; but, key factors "justify a different standard for evaluating a structural error depending on whether it is raised on direct review or raised instead in a claim alleging ineffective assistance of counsel." *Id*. at 303. For example, on direct review there is a greater chance that "not too much time will have elapsed for witness memories still to be accurate and physical evidence not to be lost." *Id*. at 302. On direct review, a trial court is given the chance to rectify their mistake and to receive direct supervision from the appellate courts. On collateral review, however, the defendant has already had a chance for a reviewing court to look at the record, memories are more likely to have faded, physical evidence is more likely to have been lost, and finality interests are in greater jeopardy. *Id*. at 302-303. As in *Weaver*, the defendant herein argues misconduct of counsel led to a structural error. The same justifications for applying *Strickland* in *Weaver* apply here: the nature of the alleged error (attorney misconduct); the potential for faded memories; the likelihood of losing physical evidence; and, finality concerns. In this matter there is even less justification for disturbing

5

finality than in *Weaver*. Defendant alleges that he should be afforded a new trial, even if he intended to confess on the witness stand. There is no logical reason to order a new trial simply for a defendant to confess to crimes for which he has already been found guilty.[5] We, therefore, recognize *Weaver* abrogated *Hampton*'s holding that automatic reversal is required on collateral review where defense counsel prohibited a defendant from testifying against his wishes.[6]

We similarly reject, as argued by the State, the application of the harmless error analysis. Harmless error analysis places the burden on the State to prove beyond a reasonable doubt that the error was harmless. *Burton, supra*, 19-1079, p. 8-9, 320 So. 3d at 1123-24. It would be illogical to place that burden on the State where it was defense counsel's misconduct that led to the constitutional violation. *Weaver* rejected placing the burden on the State even though the initial error came from a state actor, the court. Here, there was no error on the part of a state actor. Thus, there is even more "reason for placing the burden on the [defendant] in this case [due] to the nature of the error," *Weaver*, 582 U.S. 302, than there was in *Weaver* itself.

Under the foregoing framework, we must determine whether defendant has successfully met the *Strickland* standard, or, if a remand is required. Under *Strickland*, defendants must first show a deficient performance, such that the attorney's error was so serious that counsel was not functioning as the counsel

---

[5] We recognize that "[b]ecause a client's autonomy, not counsel's competence, is in issue, we do not apply our ineffective-assistance-of-counsel jurisprudence." *McCoy v. Louisiana*, 584 U.S. 414, 426 (2018). However, *McCoy* was on direct review. Thus, while *McCoy* supports our finding that structural error and automatic reversal apply on direct review, it does not alter our decision that *Strickland* applies on collateral review.

[6] Article I § 19 of the Louisiana Constitution guarantees a right to appeal with review of the full record. It does not prohibit the defendant from raising legal issues that would have been impossible to raise in the trial court, such as a defendant being prohibited from informing the court that counsel had denied their right to testify. Jurisdiction to review such direct claims can be found in La. Const. art. V § 10. No one doubts this Court could order review of such direct review claims pursuant to its plenary power under La. Const. art. V. § 1, 2, and 5. In the instant matter, defendant informed the trial court at his sentencing hearing that he had wanted to testify but that his trial counsel had denied him that right. He also recognized that he could appeal on that issue. The matter, however, was not raised on direct review.

guaranteed by the Sixth Amendment. *Harrington v. Richter*, 562 U.S. 86, 104 (2011). Defendant must also show prejudice, i.e., a reasonable probability of a different outcome in their trial, absent the attorney error of refusing to let him testify.[7] *Weaver*, 582 U.S. at 303-304. *Strickland* does not require defendants to produce substantiating testimony or affidavits from trial counsel. While the trial court determined that defense counsel prohibited the defendant from testifying, it made no determination as to whether there had been deficient performance or prejudice. The full substance of defendant's potential testimony does not appear in the record.[8] While proof from trial counsel is not required, the defendant bears the burden of proof, and we find that sufficient corroborating substantiation apart from the defendant's own testimony is required. The trial court made no findings as to whether it was constitutionally ineffective not to allow the defendant to make such statements, nor are there any findings that the proposed testimony would have swayed jurors. The record before us does not allow us to make an independent determination of those issues. We therefore remand this matter to the trial court to conduct a hearing to determine whether defendant has met the standard under *Strickland*.

**REVERSED AND REMANDED**

---

[7] For analytical reasons, *Weaver* assumed prejudice could also be shown where structural errors otherwise rendered the trial fundamentally unfair, but the Court did not decide that question. *Weaver*, 582 U.S. at 300. Subsequent opinions have only applied the "reasonable probability of a different outcome" type of prejudice. *Andrus v. Texas*, 590 U.S. 806, 821 (2020); *Shinn v. Kayer*, 592 U.S. 111, 117-118 (2020).

The general framework for *Strickland* required by the federal constitution is not changed between state and federal courts. However, federal courts reviewing *Strickland* claims that have already been reviewed by state courts may only grant relief if it is determined that "there is no possibility fairminded jurists could disagree that the state court's decision" was wrong. *Harrington*, *supra*, 562 U.S. at 102. Defendant's argument that we should reject federal decisions simply because they also consider federal habeas law is without merit.

[8] In an appendix to his original application for post-conviction relief, defendant hinted as to what his potential testimony would be. He stated trial counsel "would not permit [him] to testify, depriving him of the opportunity to present his desired defense to the effect that the incident was not a robbery but a failed drug transaction."

7

No. 2025-KP-00209

STATE OF LOUISIANA

VERSUS

JARVIS TURNER

*On Writ of Certiorari to the Court of Appeal, Fourth Circuit,*
*Parish of Orleans–Criminal*

**WEIMER, C.J.**, additionally concurring.

For the following reasons, I additionally concur in the result.

Defendant's writ application was granted to address whether the testimony of trial counsel is necessary to show that defendant was prevented from testifying in the trial. I believe the language in **State v. Hampton**, 00-0522, p. 14 (La. 3/22/02), 818 So.2d 720, 729, has been misinterpreted by some courts to mandate trial counsel's participation as if, by inclusion of this language, this court intended to create a bright line rule. Such a mandatory requirement could unnecessarily undermine a defendant's case where trial counsel refuses to participate or is unavailable. The testimony of trial counsel is not absolutely necessary under **Hampton**. In this case, I find the affidavit from the investigator, coupled with other evidence, was sufficient to put at issue whether trial counsel prohibited defendant from testifying at trial.

In my concurring opinion in **Hampton**, I expressed concern about a ruling that enables far too many cases to be reevaluated and noted my belief that the denial of a defendant's right to testify by the ***trial court***, as in **State v. Dauzart**, 99-3471, p. 6 (La. 10/30/00), 769 So.2d 1206, 1210, is distinguishable from the denial of a defendant's right to testify by ***trial counsel***, as in **Hampton**. ***Id.***, 00-0522 at 1, 818 So.2d at 733 (on rehearing) (Weimer, J., concurring). However, I continue to believe,

as I did in **Hampton**, the analysis enunciated in **Strickland v. Washington**, 466 U.S. 668, 692-93 (1984), should be applied in reviewing a defendant's claim that his "former trial counsel, as opposed to the trial court, ... would not allow [him] to testify." **Hampton**, 00-0522 at 1, 818 So.2d at 733 (on rehearing) (Weimer, J., concurring). For this reason, I agree that the majority in **Hampton** incorrectly found that "automatic reversal is required on collateral review where defense counsel prohibited a defendant from testifying against his wishes." See **Turner**, 25-0209, slip op. at 6. Accordingly, to obtain relief, defendant is also required to prove that trial counsel's performance was deficient and prejudicial. See **Strickland**, 466 U.S. at 693. Overruling the **Hampton** decision is correct.

# SUPREME COURT OF LOUISIANA

## No. 2025-KP-00209

## STATE OF LOUISIANA

## VS.

## JARVIS TURNER

On Writ of Certiorari to the Court of Appeal, Fourth Circuit,
Parish of Orleans Criminal

**PENZATO, Justice Pro Tempore**, concurring.

I agree the *Strickland* standard applies to defendant's post-conviction claim that his trial counsel prevented him from testifying at trial. Contrary to the majority, I further believe defendant's allegation does not assert a structural error. To the extent *State v. Hampton*, 00-0522 (La. 3/22/02), 818 So. 2d 720 held otherwise, it should be overruled on both grounds.

As this court recognized in *State v. Dauzart*, 99-3471 (La. 10/30/00), 769 So. 2d 1206, 1208, a trial court commits a structural error when it prevents a defendant from testifying at trial. However, when, unbeknownst to the trial court, a defense attorney prevents his client from testifying, the trial court has committed no error whatsoever, either structural or otherwise. The issue in such cases, as here, is the conduct of the defense attorney and its effect, if any, on the outcome of defendant's trial. The only workable framework for analyzing this issue is the *Strickland* standard.

The lack of state action in ineffective-assistance claims was expressly observed by the *Strickland* court. Adopting the general requirement that a defendant must prove prejudice in such cases, the Court explained:

> The government is not responsible for, and hence not able to prevent, attorney errors that will result in reversal of a conviction or sentence. Attorney errors come in an infinite variety and are as likely to be utterly

harmless in a particular case as they are to be prejudicial. They cannot be classified according to likelihood of causing prejudice.

*Strickland v. Washington*, 466 U.S. 668, 693; 104 S.Ct. 2052, 2067; 80 L.Ed.2d 674 (1984).

Consistent with this reasoning, "[t]he *Strickland* standard applies to any claim by the defendant that defense counsel has not discharged [his] responsibility—either by failing to inform the defendant of the right to testify or by overriding the defendant's desire to testify." *Hartsfield v. Dorethy*, 949 F.3d 307, 313 (7th Cir. 2020) (quoting *Brown v. Artuz*, 124 F.3d 73 (2d Cir.1997); internal quotation marks omitted). As noted in the majority opinion, this is the predominant approach in other jurisdictions.

As to proof, I agree with the majority that an affidavit or testimony from the defense attorney is not necessarily required, but a defendant faces a difficult burden without it. Under the first prong of *Strickland*, a defendant must prove counsel's performance was deficient, which in this context means proving counsel did in fact prevent defendant from testifying. Significant corroborative evidence is necessary when a defendant, after conviction, makes the self-serving claim that his attorney prevented him from testifying. Because a court may presume from a defendant's silence at trial that he waived his right to testify, particularized allegations and supporting evidence must establish defense counsel usurped defendant's decision-making power. *See State v. James*, 05-2512 (La. 9/29/06), 938 So. 2d 691, 692 (*per curiam*). As explained by one court:

> There is a grave practical difficulty in establishing a mechanism that will protect a criminal defendant's personal right . . . to testify in his own behalf without rendering the criminal process unworkable. It is extremely common for criminal defendants not to testify, and there are good reasons for this, as we have seen. Yet it is simple enough after being convicted for the defendant to say, "My lawyer wouldn't let me testify. Therefore I'm entitled to a new trial." . . . .
>
> [T]his barebones assertion by a defendant, albeit made under oath, is insufficient to require a hearing or other action on his claim that his

2

right to testify in his own defense was denied him. It just is too facile a tactic to be allowed to succeed. Some greater particularity is necessary—and also we think some substantiation is necessary, such as an affidavit from the lawyer who allegedly forbade his client to testify—to give the claim sufficient credibility to warrant a further investment of judicial resources in determining the truth of the claim.

*Underwood v. Clark,* 939 F.2d 473, 475-76 (7th Cir. 1991).

If the evidence sufficiently proves the first element of the *Strickland* standard, the defendant must then prove a reasonable probability that the results of the proceeding would have been different if defense counsel had allowed him to testify. *See Strickland*, 466 U.S. at 694; 104 S.Ct. at 2068. This analysis considers all of the evidence that would have been presented to the jury if defendant had taken the stand, both from the defense and the state.

Lastly, I concur in the opinion since I find the statements concerning the proper approach and remedy if presented on direct review to apply in instances when the court causes the error. In instances where the court did not know of any desire to testify, the matter should be considered in light of *Strickland* and remain subject to a harmless error analysis. For these reasons, I respectfully concur.