738 So.2d 143 (1999)
STATE of Louisiana
v.
Johnny D. BORDES.
No. 98-KA-0086.
Court of Appeal of Louisiana, Fourth Circuit.
June 16, 1999.
*144 C. Gary Wainwright, New Orleans, LA, Attorney for Appellant, Johnny Bordes.
Harry F. Connick, District Attorney, Holly Herrle-Castillo, Assistant District Attorney, New Orleans, LA, Attorneys for Appellee, The State of Louisiana.
Court composed of Judge WILLIAM H. BYRNES III, Judge MIRIAM G. WALTZER and Judge PATRICIA RIVET MURRAY.
WALTZER, Judge.
The defendant, Johnny Bordes, appeals his conviction by the trial judge of possession of stolen property valued at five hundred dollars or more.

I. STATEMENT OF THE CASE
On 5 September 1995, the defendant, Johnny D. Bordes, was charged by bill of information with possession of stolen property valued over five hundred dollars in violation of LSA-R.S. 14:69. The defendant entered a plea of not guilty at his arraignment on 13 September 1995. The defendant elected a judge trial on 2 October 1995 and was found guilty as charged. On 8 December 1995, the State filed a multiple bill of information. The defendant pled guilty to the multiple bill of information. The trial court adjudicated defendant a fourth felony offender. The defendant waived delays, and the trial court sentenced defendant to serve twenty years at hard labor with credit for time served.

II. STATEMENT OF THE FACTS
In the late hours of 28 July 1995, New Orleans Police Officers Bryan Lampard and Jake Schnapp were on proactive patrol in the 1200 block of Saratoga Street when they observed the defendant in a blue Plymouth Voyager van speaking with Melvin Hunter, a known drug dealer. When Hunter saw the marked police car, he immediately turned around and walked into his residence. The defendant drove away at a high rate of speed. The officers believed they had interrupted a drug transaction and decided to pursue the van. The officers activated their lights and siren and pursued the defendant for several blocks before they were able to pull him over. The officers ordered the defendant out of the vehicle and patted him down for *145 weapons. The officers asked defendant for his driver's license and registration. However, the defendant was unable to produce any documentation. The officers checked the license plate number and vehicle identification number. The officers discovered that the license plate and vehicle had been stolen. The officers advised the defendant and his passenger, Likizzie Harris, that they were under arrest for possession of stolen property. The defendant and Ms. Harris were advised of their Miranda rights and taken to the Sixth District Police Station. The officers recovered six hundred, eighteen dollars in currency from the floorboard of the vehicle. The officers also recovered a Toyota key that had been used to start the vehicle by defeating the ignition system. The key had been filed down and only went partially into the ignition. The key did not fit any of the door or glove compartment locks.
At the police station, the defendant informed the officers that he borrowed the vehicle from a subject by the name of Vincent. However, the defendant did not know Vincent's last name or address. The defendant could not give the officers a date or time when he was supposed to return the vehicle to Vincent. The officers subsequently contacted the owner of the vehicle who stated that he did not know the defendant and did not give the defendant permission to use the vehicle.
Louis Timken testified that his 1992 Plymouth Voyager van was stolen from his residence on 16 June 1995. The theft was reported to the police. Mr. Timken was contacted in July by police and informed that they had located his vehicle. Timken purchased the vehicle in 1991 for sixteen thousand two hundred thirty-two dollars. His insurance company paid him eleven thousand two hundred thirteen dollars and thirty-eight cents for the vehicle when he filed the theft claim in June of 1995. Mr. Timken stated that he did not know the defendant and did not give him permission to use his vehicle.
Likizzie Harris, the defendant's girlfriend, testified that the defendant told her he borrowed the vehicle from a guy by the name of Vincent. The witness had never seen the defendant with the van until that night. On that evening, she and the defendant, along with her two children, were on their way to Blockbuster to return a videotape when the defendant decided to stop and visit Melvin Hunter. After speaking with Hunter for a short time, the defendant returned to the vehicle and they proceeded uptown. They had driven a few blocks when the officers pulled over the defendant. The defendant was not driving erratically or speeding. The officers asked the defendant to step out of the vehicle. While one of the officers questioned the defendant, the other officer asked the witness her name and address. The defendant was then transported to the police station in the police vehicle. The van was towed to the police station. Ms. Harris and her children remained in the van while it was being towed to the station. When they arrived at the police station, the officers advised her that the vehicle was stolen and placed her under arrest. The witness told the officers she did not know anything about the van. Ms. Harris testified that the money found in the van belonged to the defendant's mother. The defendant was supposed to use the money to pay his mother's furniture and telephone bills.
The defendant, Johnny Bordes, testified he borrowed the vehicle from a guy by the name of Vincent. He gave Vincent twenty dollars to borrow the vehicle so he could return a videotape to Blockbuster. Vincent gave him a single key which defendant put on his key chain. The key fit into the vehicle's ignition without any problems. The defendant then went to pick up his girlfriend and go to Blockbuster. On the way, he decided to stop and visit with an old friend, Melvin Hunter. The defendant parked the vehicle and went into Hunter's residence. He did not see the police vehicle as he was leaving Hunter's *146 residence. He did not see the police vehicle until the police vehicle pulled behind him. The defendant pulled to the side of the road as soon as the officers put on the siren. The defendant was not driving erratically or speeding. After the officers pulled him over, they asked him to step out of the vehicle. The officers asked for his driver's license and registration. He told the officers he did not have any documentation. The officers then asked him about his relationship with Melvin Hunter. While one officer was speaking with the defendant, the other officer ran the license plate number. When the officer informed the defendant that the license plate was stolen, the defendant told the officer he did not know anything about the license plate as he borrowed the vehicle from someone by the name of Vincent. The defendant was arrested and placed in the police vehicle. The van was towed to the police station. When he arrived at the police station, the defendant was advised that he was under arrest for possession of the stolen vehicle and given his Miranda rights. The defendant acknowledged two prior convictions for possession of cocaine. The defendant stated that the money found in the van belonged to his mother which he was to use to pay her furniture and telephone bills.

III. DISCUSSION

A. Errors Patent and Assignment of Error Number 3
A review of the record for errors patent reveals none.

B. Assignment of Error Number 1
The defendant argues that the State failed to produce sufficient evidence to prove that the defendant had the specific intent to possess stolen property. The defendant contends that he did not know, and could not have known, that the vehicle was stolen.
When assessing the sufficiency of evidence to support a conviction, the appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La.1987).
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. LSA-R.S. 15:438. LSA-R.S. 15:438 is not a separate test from Jackson v. Virginia, supra, but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, supra.
The defendant was charged with and convicted of illegal possession of stolen property, the essential elements of which are: (1) the property was stolen; (2) the property was of value; (3) the defendant knew or should have known the property was stolen; and (4) the defendant intentionally possessed, procured, received, or concealed the property. LSA-R.S. 14:69; State v. Hoskin, 605 So.2d 650 (La.App. 4 Cir.1992). The defendant does not dispute that the vehicle was stolen and that he was in possession of the vehicle. The defendant argues that he did not know the vehicle was stolen. The defendant testified that Vincent gave him a single key for the vehicle and that the key fit into ignition. The defendant stated that he did not know if the key fit the door locks as he did not have the opportunity to lock the doors. *147 Thus, he argues that he did not know and should not have known that the vehicle was stolen.
However, Officers Lampard and Schnapp testified that the key was a Toyota key that had been filed down to fit into the van's (a Plymouth) ignition. The officers also stated that the key did not fit completely into the ignition. The key did not fit into the door or glove compartment locks.
The trial judge stated that he found the defendant's testimony incredible and chose to accept the testimony of the police officers. Defendant's possession and use of a filed-down, substitute key which key did not fit into the ignition and other locks on the van was sufficient to prove that the defendant knew or should have know that the vehicle was stolen.

C. Assignment of Error Number 2

The defendant also suggests that he received ineffective assistance of counsel in the trial court. Specifically, he contends that his trial counsel was ineffective for failing to file a motion to suppress the statement made by the defendant and for advising the defendant to elect a judge trial.
Generally, the issue of ineffective assistance of counsel is a matter more properly addressed in an application for post conviction relief, filed in the trial court where a full evidentiary hearing can be conducted. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Johnson, 557 So.2d 1030 (La.App. 4 Cir.1990); State v. Reed, 483 So.2d 1278 (La.App. 4 Cir.1986). Only if the record discloses sufficient evidence to rule on the merits of the claim do the interests of judicial economy justify consideration of the issues on appeal. State v. Seiss, 428 So.2d 444 (La.1983); State v. Ratcliff 416 So.2d 528 (La.1982); State v. Garland, 482 So.2d 133 (La.App. 4 Cir.1986); State v. Landry, 499 So.2d 1320 (La.App. 4 Cir.1986).
The defendant's claim of ineffective assistance of counsel is to be assessed by the two part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Fuller, 454 So.2d 119 (La.1984). The defendant must show that counsel's performance was deficient and that the deficiency prejudiced the defendant. Counsel's performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment. Strickland, supra at 686, 104 S.Ct. at 2064. Counsel's deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, supra at 693, 104 S.Ct. at 2068. The defendant must make both showings to prove that counsel was so ineffective as to require reversal. State v. Sparrow, 612 So.2d 191, 199 (La.App. 4 Cir.1992).
This court has recognized that if an alleged error falls "within the ambit of trial strategy" it does not "establish ineffective assistance of counsel." State v. Bienemy, 483 So.2d 1105 (La.App. 4 Cir. 1986). Moreover, as "opinions may differ on the advisability of a tactic, hindsight is not the proper perspective for judging the competence of counsel's trial decisions. Neither may an attorney's level of representation be determined by whether a particular strategy is successful." State v. Brooks, 505 So.2d 714, 724 (La.1987), cert. denied, Brooks v. Louisiana, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987).
The defendant's allegation that his trial counsel was ineffective in advising defendant to elect a bench trial is not appropriate for review on appeal. The appellate record does not include the colloquy that *148 occurred between the trial judge, defense counsel and defendant at the time the defendant elected a bench trial. It is also unknown upon what basis the advice was made. Therefore, the more appropriate remedy is for the defendant to raise this issue in an application for post conviction relief and seek an evidentiary hearing on the matter.
The defendant also argues that his trial counsel was ineffective for failing to file a motion to suppress the statement defendant made to the police officers after his arrest. In this statement, the defendant told the police officers that he borrowed the vehicle from a person by the name of Vincent for twenty dollars. The defendant did not know Vincent's last name or address. The defendant stated that he believed Vincent lived in the lower Ninth Ward. The defendant could not tell the officer the time or place where the defendant was to return the vehicle to Vincent.
The State has the burden of proving that a statement given by a defendant was freely and voluntarily given, not the product of threats, promises, coercion, intimidation, or physical abuse. LSA-R.S. 15:452; State v. Seward, 509 So.2d 413 (La.1987) and State v. Daliet, 557 So.2d 283 (La.App. 4 Cir.1990). To establish the admissibility of a statement made by an accused person during custodial interrogation, the State must prove that the accused had been advised of his Miranda rights and that he waived these rights prior to interrogation. Brooks; Daliet. The determination of a statement's admissibility is within a trial court's discretion, and it should not be disturbed unless it is not supported by the evidence. Brooks; Daliet. In State v. Johnson, 482 So.2d 186 (La.App. 4 Cir.1986), writ den. 486 So.2d 749 (La.1986), this court noted that a voluntary, spontaneous statement is admissible without Miranda warnings, even if the defendant is in custody when the statement is made. See also State v. Jackson, 600 So.2d 739 (La.App. 4 Cir.1992).
The defendant is correct that his trial counsel did not file a motion to suppress any statement. However, a review of the trial transcript reveals that the trial judge allowed defense counsel to question the police officers about the statement at trial. Officers Lampard and Schnapp testified that the defendant was advised of his Miranda rights upon his arrest and after his arrival at the Sixth District Police Station. The officers further stated that defendant's statement was voluntary and unsolicited. Defendant did not introduce any evidence at trial to refute the officers' testimony that he had received his Miranda rights prior to speaking to the officers. Furthermore, defendant has failed to meet the second criteria under Strickland as he has shown no prejudice from the alleged error. The statement of which defendant complains was exculpatory in nature. Thus, there was no basis in support of a motion to suppress the statement.

CONCLUSION
For the above reasons Bordes' conviction and sentence for possession of stolen property valued at five hundred dollars or more is affirmed.
AFFIRMED.