hBAGNERIS, J.

STATEMENT OF CASE

On November 11, 1998, defendant was charged with one count of distribution of cocaine, one count of possession with intent to distribute cocaine, violations of La. R.S. 40:967, and one count of possession with intent to distribute marijuana, a violation of La. R.S. 40:966. At arraignment on November 18, 1998, he entered a plea of not guilty. The court found probable cause on December 21, 1998 and denied the motion to suppress. Following trial on March 3, 1999, a twelve-person jury found defendant guilty as charged on all three counts. The court denied the motion for a new trial on October 1, 1999 and ordered a presentence investigation.
On January 19, 2000, the court sentenced defendant to serve five years at hard labor without benefit of parole, probation, or suspension of sentence as to counts one and two, and as to count three, five years at hard labor. The sentences were to run concurrently. The defense filed an oral notice of appeal that was granted.
I STATEMENT OF FACT
On November 5, 1998, Officers Ronald Stephens and Paul Noel were on proactive patrol with the Second District Task Force. They saw a black Plymouth Neon parked on Saratoga Street, near the intersection with Foucher Street. As they approached, they observed a male, Jessie Davis, standing next to the driver’s side window of the vehicle. They observed Davis hand U.S. currency to the driver of the vehicle. They then observed the driver hand an unknown object to Davis. Based on their past experience, the officers believed that they witnessed a hand-to-hand narcotics transfer.
They pulled the police unit up to the front vehicle, facing the vehicle. They illuminated the spotlights and takedown lights and exited the unit. Officer Stephens approached Davis. When Davis observed the officers, he became startled and nervous. He placed his hands in front of his chest and started to walk backwards, away *375 from the vehicle. As Stephens approached, he identified himself as the police, ordered Davis to stop and place his hands on the vehicle. Davis did not comply, so Stephens continued to approach him. The man started to put his right hand in the air, and Stephens saw that his left hand was still clenched. Stephens reached out and grabbed the left wrist, concerned that he might have been concealing some type of weapon inside his left hand. Stephens ordered him to open his hand, and he saw a small plastic bag containing a compressed white substance, which based on his past experience he believed to be crack cocaine. Davis was immediately placed under arrest and advised of his rights.
At the same time, Officer Noel approached the driver of the vehicle, later identified as the defendant. Noel shined his flashlight into the car and observed several bags of an off-white compressed substance, which he believed to be cocaine, and green vegetable matter, which he believed to be marijuana on the|sdriver’s lap. When Noel shined his light into the car, the driver was pushing it off his lap onto the floor. At that point, the driver was placed under arrest for possession of controlled dangerous substances and was ordered to step out of the vehicle. The driver attempted to start the Neon, but he was not successful. Because Noel feared that the driver would attempt to flee, he opened the door and again directed the driver to get out of the car. He complied with the officer’s directions. He was arrested and advised of his rights. He told the officers that his name was Donald Ardoin, but they later discovered that his name was Donald Jason.
One of the confiscated bags contained nineteen pieces of individually wrapped crack and the other bag contained eleven packets of individually wrapped marijuana. Approximately $1500.00 in U.S. currency was taken from the console of the car. The officer also confiscated a plastic bag containing numerous unknown white tablets. The pills were not controlled dangerous substances.
Officer William Giblin tested the substances retrieved by Officers Stephens and Noel and found the rock like substances to be cocaine and the green vegetable matter to be marijuana.
Babiette Wilkerson testified that she had gone to dinner with the defendant earlier in that evening. He borrowed her car to see if some friends were playing dominoes. She testified that she had $1700 in the car. In the morning, she had taken the money out of the house to pay two car notes, her rent, and for Christmas shopping. She left it in a little change purse in the car; she didn’t think about it .until after the defendant drove off. Wilkerson testified that she does not like to write checks. She puts the money aside; if it is not in her sight, she has it to use when she needs it. Wilkerson was emphatic that the money in the car was hers. She denied having cocaine or marijuana in the car, but she had some penicillin in it.
pThe defendant testified that Jason is his mother’s maiden name. Before he graduated from high school, he changed to his father’s last name. At the time of his arrest, he owned a small clothing shop.
On November 4, 1998, he and Babiette Wilkerson had dinner and then went to her cousin’s house. When he went to meet his friends to play dominoes, they had already finished playing. Jessie Davis asked him for a ride home. As they exited the bar, they saw the police officers coming down Foucher St. There were two men standing right behind his car. When the police saw the two men, they pulled diagonally behind his car, jumped out, approached the two men, and put them on the car. Then they turned their attention to Davis and him.
*376 Officer Stephens came to the passenger side and put his flashlight inside the car. He told Davis to get out of the car. While Davis was getting out, the defendant attempted to start the car, and the officer told him to put his hands on the steering wheel. Officer Noel came up and escorted the defendant out of the car. He and Davis were then put on the police car. The officers handcuffed all four of the men; they were told that they were not under arrest, but the cuffing was for the officers’ protection. While Noel called in the names, Stephens searched the car. He came out with a pouch and a bag with some white pills. He asked to whom the stuff belonged, and defendant said that it must be for his girlfriend.
The officer started searching the area, and he came back with some drugs. He did not get them from the car. The defendant was arrested for two attachments that were out on him. The other two men were released.
The defendant denied selling drugs. He did not know that the money was in the car. He insisted that the officers did not get drugs from the car. He admitted that the pills and the money were in the car, but not the drugs.
| ¡¿ERRORS PATENT
A review of the record for errors patent reveals an error in the sentence imposed by the trial court on defendant’s conviction for possession with intent to distribute marijuana. La. R.S. 40:966(B)(2) provides that a person convicted of possession with the intent to distribute marijuana shall “be sentenced to a term of imprisonment at hard labor for not less than five years nor more than thirty years and pay a fine of not more than fifty thousand dollars.” The transcript of the sentencing hearing indicates that the trial court imposed a sentence of five years at hard labor on the defendant. However, the trial court failed to impose a fine as required by the statute. The failure to impose the fine makes the sentence illegally lenient. On appeal, this court will not correct errors favorable to a defendant where the issue is not raised by the State. State v. Fraser, 484 So.2d 122 (La.1986). No other errors were found.

ASSIGNMENT OF ERROR

By defendant’s sole assignment of error, he claims that counsel was ineffective for conceding to the jury that his star witness’s testimony was “hard to believe” and for failing to introduce documents that would have bolstered his star witness’s testimony.
“As a general rule, claims of ineffective assistance of counsel are more properly raised by application for post conviction relief in the trial court where a full evidentiary hearing may be conducted if warranted.” State v. Howard, 98-0064 (La.4/23/99), 751 So.2d 783, cert. denied, Howard v. Louisiana, 528 U.S. 974, 120 S.Ct. 420, 145 L.Ed.2d 328 (1999). However, where the record is sufficient, the claims may be addressed on appeal. State v. Wessinger, 98-1234 (La.5/28/99), 736 So.2d 162, 195, cert. denied, Wessinger v. Louisiana, 528 U.S. 1050, 120 S.Ct. 589, 145 L.Ed.2d 489 (1999); State v. Bordes, 98-0086 (La.App. 4 Cir. 6/16/99), 738 So.2d 143. Ineffective assistance of Rcounsel claims are reviewed under the two-part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Brooks, 94-2438 (La.10/16/95), 661 So.2d 1333 (on rehearing); State v. Robinson, 98-1606 (La.App. 4 Cir. 8/11/99), 744 So.2d 119. In order to prevail, the defendant must show both that: (1) couiisel’s performance was deficient; and (2) he was prejudiced by the deficiency. Brooks, supra; State v. Jackson, 97-2220 (LaApp. 4 Cir. 5/12/99), 733 So.2d 736. Counsel’s *377 performance is ineffective when it is shown that he made errors so serious that counsel was not functioning as the “counsel” guaranteed by the Sixth Amendment. Strickland at 686, 104 S.Ct. at 2064; State v. Ash, 97-2061 (La.App. 4 Cir. 2/10/99), 729 So.2d 664, writ denied, 99-0721 (La.7/2/99), 747 So.2d 15. Counsel’s deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant must show that there is a reasonable probability that, but for counsel’s deficient performance the result of the proceeding would have been different; “[a] reasonable probability is a probability sufficient to undermine confidence in the outcome.” Strickland, at 693, 104 S.Ct. at 2068; State v. Guy, 97-1387 (La.App. 4 Cir. 5/19/99), 737 So.2d 231.
This court has previously recognized that if an alleged error falls “within the ambit of trial strategy” it does not “establish ineffective assistance of counsel.” State v. Bordes, 98-0086 (La.App. 4 Cir. 6/16/99), 738 So.2d 143, 147, quoting State v. Bienemy, 483 So.2d 1105 (La.App. 4 Cir.1986). Moreover, as “opinions may differ on the advisability of a tactic, hindsight is not the proper perspective for judging the competence of counsel’s trial decisions. Neither may an attorney’s level of representation be determined by whether a particular strategy is successful.” Id. quoting State v. Brooks, 505 So.2d 714 (La.1987), cert. denied, Brooks v. Louisiana, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987).
The defendant argues that counsel’s comment that Wilkerson’s testimony concerning the money was “hard to believe” completely undermined his entire |7defense. Furthermore, he contends that counsel failed to pursue the proper channels for admitting evidence, her bills, which would have corroborated her testimony that she was using the money to pay bills. Relator maintains that the outcome of his trial would have been different had counsel done his job.
The jury heard Wilkerson’s testimony that she placed $1700.00 in her car in the morning to pay two car notes, her rent, and for Christmas shopping and that she forgot about the money when defendant borrowed her car. The jury also heard the defendant’s testimony that he did not know the money was in the car. The defendant has not shown that counsel’s comment influenced the jury or that the introduction of Wilkerson’s bills would have changed the verdict. It cannot be said that, but for trial counsel’s alleged deficient performance, there was a reasonable probability that the outcome of the trial would have been different. Accordingly, defendant has not shown that he was prejudiced by trial counsel’s alleged deficient representation.

CONCLUSION

Accordingly, the defendant’s conviction and sentence are affirmed.

CONVICTION AND SENTENCE AFFIRMED.