MAX N. TOBIAS, JR., Judge
|TOn 1 April 2011, the state charged the defendant/appellant, Delmon Marzett (“Marzett”), by bill of information with possession of cocaine, a violation of La. R.S. 40:967 C. He pleaded not guilty on 6 April 2011. On 12 July 2011, a hearing on the motions was held, and the trial court found probable cause and denied the motion to suppress the evidence.[1] The defense objected and noticed its intent to seek supervisory review. Trial was continued several times and ultimately held on 13 March 2012.[2] The six-person jury found Marzett guilty as charged. A pre-sentence investigation was ordered, and sentencing was set for 15 May 2012.
On that date Marzett filed a pro se motion for a new trial. On 13 September 2012, a hearing was held on the motion and denied.[3] The defendant waived delays, and the trial court sentenced him to thirty months at hard labor; special conditions included the completion of the Blue Walters drug program. On 19 September 2012, the state filed a multiple bill. This timely appeal follows.
| STATEMENT OF FACT
At the 13 March 2012 trial,[4] Officer Drew Deacon of the New Orleans Police Department (“NOPD”) testified that on 25 May 2011 he was part of the Sixth District Task Force. At about 4:55 p.m., he and his partner, NOPD Officer Jeffrey Yount, were on proactive patrol in the area of Simon Bolivar Avenue and Thalia Street. Officer Yount was driving, and turned southbound onto Thalia Street. The two officers observed what they believed to be a hand-to-hand narcotics transaction between the defendant and two other males. As they turned the corner, the two men, *833 who were on foot, started to walk away from Marzett’s 2006 silver Volvo sedan. Officer Deacon said that he saw the defendant “making furtive movements towards the floor board of the vehicle.” Those movements suggested “that he’s possibly trying to hide something.” The officer stated that they noticed that there was an expired temporary license plate on the vehicle, and thus they decided to conduct a traffic stop. For the sake of safety, the officers asked Marzett to exit the Volvo. Officer Deacon approached the driver’s side of the car. Because of the furtive movements and the possibility that the defendant had hidden something that could harm the officers, Marzett was asked to exit the car.
Officer Deacon testified that as Marzett opened the car door, he saw in plain view in the door’s pocket “a small, orange, plastic cup that’s used to cover the plunger side of the syringe and inside that cap was a small, clear, plastic bag that |shad a white powder substance that we thought was cocaine.” As the defendant exited the car, the officers saw a loaded syringe (with a red substance thought to be blood) sitting on the driver’s seat. The officers told Marzett that he was being detained for narcotics violations. Officer Deacon said that the syringe containing blood indicated that Marzett was an intravenous drug user; other indicators of narcotics use were present that included a bandana wrapped around the defendant’s arm (being used as a tourniquet), dried blood on the inside of his elbow, and track marks with the darkening and the scarring of his veins. The officer said that the white powder tested positive for cocaine. Marzett was arrested, and Officer Yount advised him of his Miranda rights from a card.
On cross examination the officer clarified that all three men were not in the car, which was not moving; however, the car was running. Two men were standing outside the vehicle. The officer said that a temporary license plate could not be run through the computer. Officer Deacon could not say whether Marzett owned the Volvo, but he was inside the vehicle in the driver’s seat. He had not observed Mar-zett driving the car and he did not see the defendant put the evidence and contraband into the door pocket.
Officer Jeffrey Yount testified that he was on proactive patrol with Officer Deacon on 25 May 2011 at about five o’clock when he saw the defendant in the driver’s seat of a car and two men at the driver’s side window. The officer said that they “appeared to be possibly conducting a narcotics transaction.” The two men, who were outside the car, looked up, saw the police officers coming around the corner, and immediately walked away. Officer Yount stated that as they pulled |4up to the car, they noticed the expired temporary license plate. The officers pulled up almost next to the vehicle and they saw Marzett reaching toward the floorboard. For safety reasons the officers stayed back a little. According to Officer Yount, Officer Deacon approached the driver’s side, and he himself approached the passenger’s side of the car. The defendant, who was sweating profusely and seemed really nervous, had a blue bandana on his arm. When Officer Deacon asked the defendant to exit the vehicle for safety reasons, Officer Yount walked over to the driver’s side next to this partner. Marzett was placed in handcuffs and put into the back seat of the police car. Officer Yount stated that he issued Marzett three traffic citations for an expired license plate, no vehicle registration, and no driver’s license. The officer said that he advised Marzett of his Miranda rights before he was taken to lock-up. Officer Yount said that the fact that the two men outside the car walked away when they saw the police car making *834 the turn had drawn their attention. The parties stipulated that the prosecution’s criminalist would have testified that on 1 April 2011 he received state’s exhibits one and two and that the items tested positive for crack cocaine.

ERRORS PATENT

A review of the record for errors patent reveals none.

ASSIGNMENT OF ERROR NUMBER 1

Marzett argues that the trial court erred by denying his pro se motion for a new trial based on the denial of his right to testify and that the ends of justice would be served by granting him a new trial. He claims that his trial counsel was ineffective because counsel prevented him from testifying and failed to subpoena his witnesses. Marzett’s appellate counsel claims that the record is sufficient to resolve the ineffective assistance of counsel claim on appeal. Counsel contends |5that the defendant consistently indicated to his trial counsel that he wanted to testify; he also asked counsel to subpoena the four witnesses who were there when he was arrested (but we find no defense request for subpoenas in the record on appeal). Appellate counsel claims that an ongoing argument at the defense table existed relating to Marzett’s demand to testify. Counsel argues that there are two notes from trial counsel showing the refusal to allow Marzett to take the stand; one of the attorneys even left the courtroom. The defendant argues that under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), he received ineffective assistance of counsel due to counsel’s preventing him from testifying and failing to subpoena witnesses, and he was prejudiced. He asserts that the ends of justice require that he be granted a new trial.
Contrariwise, the state contends that Marzett was not denied effective assistance of counsel. It argues that the defense attorneys’ decision not to call the defendant to testify or to subpoena the four alleged witnesses may have been sound trial strategy. At the hearing on the motion for a new trial, Marzett’s mother testified that the attorneys recommended that he not testify because the state could then ask about his prior conviction. It points out that Marzett did not put on the record the fact that he wanted to testify and failed to proffer what his testimony would have been or to what the four witnesses would have testified.[5]
Prior to the hearing on Marzett’s pro se motion for a new trial, in which he argued that he was entitled to a new trial because: (1) he was denied his constitutional right to testify; (2) the verdict was contrary to the law and evidence;[6] Rand (3) the ends of justice would be served by granting him a new trial, he claimed that his testimony would have contradicted the testimony of the two officers and there were two other suspects who were detained. To his motion he attached an exhibit A, allegedly Ms. Ruffin’s (his trial co-counsel) handwritten note on the case that contains a notation: “We are ok. Do not testify!”[7] He also attached another exhibit, allegedly Mr. Kennedy’s (his trial co-counsel) notation to him, which states in pertinent part: “You want a chance at winning you need to sit there and not testify. So I’m asking you to please not testify. Please.”[8] Be *835 cause Marzett omitted the case number, he filed an amended motion and also asked for subpoenas to his parents, Brenda Mar-zett and Booker Washington, as well as his trial attorneys, Tanzanika Ruffin and Michael Kennedy.
At the 13 September 2012 hearing on the defendant’s pro se motion for a new trial, the trial court had an OPD attorney in court to assist the defendant should he need assistance. Ms. Megan Garvey stated that she originally thought that she was to represent the defendant, but she would be there to assist him. She made it clear that she had not reviewed the file and was not in a position to file motions on his behalf. The court asked Marzett if he still wanted to represent himself at the hearing, and he replied affirmatively. He agreed to let Ms. Garvey sit in. He called Ms. Ruffin to the stand; after she was seated, the trial court advised Marzett that an attorney/client privilege attached to anything he might have told his trial attorneys. The court stated that his attorneys could not testify to anything said during conversations or discussions before, during, or after his trial 17unless he expressly waived that privilege. Marzett decided not to waive the privilege, and Ms. Ruffin stepped down.
Marzett called his mother, Brenda Mar-zett, to testify. She stated that she was at the trial, and she witnessed what happened during the proceeding. When asked if she witnessed “everything pertaining to the confusion surrounding the defense table,” Ms. Marzett replied: ‘Tes, I did.” She testified that she overheard what was happening at the defense table. She testified:
Ms. Ruffin refused for you to take the stand because it would bring up your prior conviction and that the Judge had told her to stay within the bill of information. And [sic] after you asked her— after Michael [Mr. Kennedy] [sic] opening statement was that you had been in jail a whole year to the jury, after she made me go buy clothes for you to wear and only come out to say that you was in jail. So she told me that be grounds to — because it was a technicality.
Ms. Marzett acknowledged that she heard her son express to his attorneys that he wished to testify. When she was asked if he waived his right to testify, Ms. Marzett replied: “No, you didn’t.” She answered affirmatively when Marzett asked if he persisted throughout the trial in wanting to testify. Ms. Marzett said that “she stopped” the defendant, a reference to Ms. Ruffin.
Ms. Marzett further testified that Mr. Kennedy was out in the hall on his cell phone telling someone that the defendant was going to trial, which was not what Mr. Kennedy wanted. He said that by going to trial “he going [sic] open up all these Pandora Boxes.” She stated that the prior case in that same section of court had been a case where a woman killed her lover, and everyone was in an uproar. Ms. Marzett claimed that jurors were out in the hall. Her daughter called and said that a coworker (Ms. Janet) had called to say that she was out in the hallway that day. Ms. Janet said that her daughter was sentenced to two years for murder in | ^section H of court, and the next case in that section was a guy on a drug charge, where he was offered a plea bargain (six years). His lawyer said that if the accused did not take the plea bargain, the trial judge would not like that, and “it’s just all in an up rage.” Ms. Janet had told Marzett’s sister that the lawyer was unprofessional. Of course, that was the section of court where Marzett was being tried.
Ms. Marzett testified that Ms. Ruffin said that she was leaving the courtroom and said “let the record reflect that she refused to represent you if you take the *836 stand, I think at that time she should have told you or withdrew from it. Let [sic] you had the right to not go forward with the trial.” She said that the jury was lined up outside when Mr. Kennedy was talking on his cell phone; the jurors heard that conversation. Ms. Marzett said that, according to what she was told, Mr. Kennedy said that if the defendant went to trial, he would be found guilty and get a life sentence.
Marzett said that he wanted to call one other witness, his father, Booker Washington, but his testimony would be the same as his mother. Mr. Washington was not called to testify.
Marzett argued that it was chaos from the time that he entered the courtroom. His attorneys tried to pressure him into taking the plea bargain; they tried to make him take the deal. When he refused, Ms. Ruffin got up and told him that he would be found guilty, and she did not want the strike on her record. Mr. Kennedy remained to handle the case. Mar-zett said that Ms. Ruffin returned and wrote on her pad: “We okay. Do not testify.” The defendant said: “Her trial strategy excluded me. She didn’t make me a part of the strategy. She felt my testimony and the evidence that I wanted to bring forth in trial, it didn’t make — it | ¡¡didn't matter. So she excluded me.” He said that Ms. Ruffin also continued to tell him to sit there and to be quiet; she said to sit there and “don’t testify.” Marzett produced the note where Ms. Ruffin clearly indicated that the defendant was not to testify. He obtained the notes when counsel left the courtroom. He claimed that he had four witnesses at the scene; he was not part of the stop, but when the officers found out he was on parole, they let the others go and put the charge on him. He also had a note from Mr. Kennedy that said that he was to sit there and be quiet; he had a fighting chance, but he should not testify. He was grateful that Mr. Kennedy had the written notes so that his attorneys could not deny what they did. He claimed that he just wanted to testify. Marzett argued that the ends of justice would be served if he were granted a new trial.
The trial court denied the motion for a new trial and stated that “this is obviously an issue that’s going to have to be reviewed on appeal if there is a claim by the defense that there’s ineffective assistance of counsel versus strategy decisions that were made during trial in this case.”
LAW AND ANALYSIS
In pertinent part, La.C.Cr.P. art. 851 states:
The motion for a new trial is based on the supposition that injustice has been done the appellant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the appellant, shall grant a new trial whenever:
[[Image here]]
(5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the appellant may not be entitled to a new trial as a matter of strict legal right.
In State v. Guillory, 10-1231 (La.10/8/10), 45 So.3d 612, the Court discussed reviewing a trial court’s ruling under La.C.Cr.P. art. 851(5):
We commence our analysis with the article pertaining to review of the motion for new trial, La.Code Crim. Proc. art. 858, which provides: “Neither the appellate nor supervisory jurisdiction of the supreme court may be invoked to review the granting or refusal to grant a new trial, except for error of law.” ... [I]f the grant or denial of a new trial *837 pursuant to La.Code Crim. Proc. art. 851(5) is a question of law, then the appellate or supervisory jurisdiction of the appellate courts and Supreme Court is properly invoked.
[[Image here]]
[T]he grant of a new trial pursuant to La.Code Crim. Proc. art. 851(5) does not involve questions of fact, but a determination by the trial court that the ends of justice would be served by a new trial even though the appellant may not be entitled to one as a matter of strict legal right. Although this court has stated on many occasions the grant or denial of a new trial under subparagraph (5) is un-reviewable, State v. Toomer, 395 So.2d 1320, 1328 (La.1981); State v. Matthews, 354 So.2d 552, 562 (La.1978); State v. Williams, 343 So.2d 1026, 1037 (La.1977); State v. D’Ingianni, 217 La. 945, 47 So.2d 731, 733 (1950), none of these decisions held it was unreviewable because it involved questions of fact. These cases held, with no analysis or rationale, that La.Code Crim. Proc. art. 851(5) is a ground upon which the trial judge may grant a new trial and that presents nothing for appellate review. Moreover, the D’Ingianni decision cited to State v. Willson, 215 La. 507, 41 So.2d 69, 70 (1949), which held subparagraph 5 of Article 509 of the 1928 Code of Criminal Procedure pertains solely to the trial judge and does not vest discretionary power in the Supreme Court to order a new trial in the absence of legal error. (Emphasis supplied.) There is no support for prior holdings that a trial court ruling under La.Code Crim. Proc. art. 851(5) is not subject to review.
We find our jurisprudence holding the trial court’s ruling on a motion for a new trial to serve the ends of justice is reviewable under an abuse of discretion standard comports with the role of this Court and the appellate courts to review questions of law in criminal cases. This Court held the question of whether the trial court abused its discretion in granting or refusing a new trial on the ground of serving the ends of justice presents |ua question of law, which should not be disturbed on review unless the trial court abused its great discretion. State v. Randolph, 275 So.2d 174, 177 (La.1973). This decision was not an aberration. State v. West, 172 La. 344, 134 So. 243 (1931) (motion for a new trial to serve the ends of justice reviewed for clear abuse of discretion); State v. Truax, 222 La. 463, 62 So.2d 643, 644 (1952)(this Court will not interfere with the determination of this issue unless the trial court arbitrarily abused its discretion).
In deciding whether the trial court in the matter before us abused its great discretion in granting a new trial solely on La.Code Crim. Proc. art. 851(5), we keep in mind two precepts. One, in this provision the trial court is vested with almost unlimited discretion and its decision should not be interfered with unless there has been a palpable abuse of that discretion. State v. Bolivar, 224 La. 1037, 71 So.2d 559, 560 (1954). Two, “[t]he motion for a new trial is based on the supposition that injustice has been done the appellant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.” La.Code Crim. Proc. art. 851; West, 134 So. at 244.
Guillory, 10-1231, pp. 2-5, 45 So.3d at 614-16. See also State v. McKinnies, 12-0335, pp. 7-9 (La.App. 5 Cir. 5/16/13), 119 So.3d 147, 2013 WL 2121353.
A defendant is entitled to effective assistance of counsel under U.S. Const. Sixth Amendment and La. Const, art. I, § 13. *838 To sustain a claim of ineffective assistance of counsel, a defendant must show that (1) his counsel’s performance was deficient, and (2) the deficiency prejudiced him. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). An error is prejudicial if it was so serious as to deprive the defendant of a fair trial; to prevail on a claim for ineffective assistance, the defendant must demonstrate a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceedings would have been different. State v. Stovall, 12-0014, p. 6 (La.App. 4 Cir. 10/17/12), 102 So.3d 994, 998.
Claims of ineffective assistance of counsel are more appropriately addressed through an application for post-conviction relief rather than on direct appeal. State v. Truitt, 500 So.2d 355 (La.1987). However, the claim may be addressed on direct appeal in the interest of judicial economy if the record contains sufficient evidence to decide the issue. State v. Peart, 621 So.2d 780 (La.1993); State v. McCarthy, 12-0342, p. 4 (La.App. 4 Cir. 3/27/13), 112 So.3d 394, 397; Stovall, 12-0014, p. 6, 102 So.3d at 998.
This court has previously recognized that if an alleged error falls “within the ambit of trial strategy” it does not “establish ineffective assistance of counsel.” State v. Bordes, 98-0086, p. 8 (La.App. 4 Cir. 6/16/99), 738 So.2d 143, 147 (quoting State v. Bienemy, 483 So.2d 1105, 1107 (La.App. 4th Cir.1986)). Moreover, as “opinions may differ on the advisability of a tactic, hindsight is not the proper perspective for judging the competence of counsel’s trial decisions. Neither may an attorney’s level of representation be determined by whether a particular strategy is successful.” Bordes, 98-0086, p. 8, 738 So.2d at 147 (quoting State v. Brooks, 505 So.2d 714, 724 (La.1987)).
Appellate counsel argues that the record is adequate to address the ineffective assistance of counsel claim, which was raised by Marzett in his pro se motion for a new trial and argued by the defendant at the hearing on the motion for a new trial. He also argued that the ends of justice would be served by granting him a new trial.
A defendant has a constitutional right to testify in his own defense. La. Const, art. I, § 16; State v. Dauzart, 99-3471, pp. 6-7 (La.10/30/00), 769 So.2d 1206, 1207-08 (citing Rock v. Arkansas, 483 U.S. 44, 49, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987)). As to Marzett’s argument that he was denied his right to testify, the Louisiana Supreme Court has held that the denial of the right to testify after a criminal defendant unequivocally makes known his desire to do so is not amenable to a harmless error analysis. State v. Hampton, 00-0522, p. 10 (La.3/22/02), 818 So.2d 720, 727.[9] See also State v. Dauzart, 99-3471, p. 5, 769 So.2d at 1210-11.
*839 To determine whether a defendant’s right to testify was violated or waived by his silence, the Court in Hampton adopted two criteria from the case of Passos-Paternina v. United States, 12 F.Supp.2d 231 (D.Puerto Rico 1998), affd, 201 F.3d 428 (1st Cir.1999). First, absent extraordinary circumstances, the court should not inquire into a criminal defendant’s right to testify. The court should assume that a criminal defendant, by not attempting to take the stand, has knowingly and voluntarily waived his right. Second, a defendant can only rebut the presumption by showing that his attorney caused him to forego his right to testify: (1) by alleging specific facts, including an affidavit by his trial attorney from which a court could reasonably find that the attorney told the defendant that he was legally forbidden to testify or in some similar way compelled him to remain [ ,4silent; and (2) by demonstrating from the record that those specific factual allegations would be credible. Hampton, 00-0522, pp. 14-15, 818 So.2d at 729-730.[10] Cf., Johnson v. Cain, 712 F.3d 227 (5th Cir.2013).
In Hampton, Hampton’s trial attorney said that he controlled the decision as to whether Hampton testified, and the attorney refused to permit Hampton to testify. Hampton’s attorney realized twenty minutes later that he had made a mistake, and brought the mistake to the OIDP office’s attention. An application for post-conviction relief was subsequently filed, and a hearing was held. Hampton’s attorney testified that from day one, Hampton stated that he wanted to testify at trial. Hampton, 00-0522, pp. 8-9, 818 So.2d at 726.[11]
Here, Marzett failed to make the showing required by Hampton. He claimed that he was denied his right to testify by his ineffective counsel, but he fails to show where in the record he demanded to take the stand, but was not allowed. At the hearing on his pro se motion for a new trial, his mother testified that his trial counsel refused to let him testify because the state could then question him about his prior conviction. According to that testimony, trial counsel made a trial strategy decision after Marzett had declined the plea bargain.
Marzett did not attempt to take the stand, and he failed to rebut the presumption acknowledged in Hampton. He did not waive his attorney-client | ^privilege so that Ms. Ruffin, whom he called to the stand, could testify. He did not allege specific facts that were acknowledged in an affidavit by trial counsel because he did not waive his privilege. Marzett did not make a showing of what happened before and during trial from which a trial court could reasonably conclude that the attorneys told him that he was legally forbidden to testify. The notes allegedly written by his trial counsel, Ms. Ruffin and Mr. Kennedy, which were exhibits attached to his motion for a new trial, do not prove that counsel absolutely refused to let him testify. In one note counsel asked Marzett not to testify and added “please” to the plea; the other note merely stated: “Do not *840 testify.” Marzett has failed to carry his burden of proving an ineffective assistance of counsel claim under Strickland.[12] He has not shown that the performance of his trial attorneys was deficient because they prevented him from testifying, and of course, he has not shown prejudice. As to counsel’s failure to subpoena the defendant’s witnesses, who were allegedly there on the street when he was arrested, he has provided no affidavits from the four as to what they would have testified (assuming that their names and addresses were known).
After a consideration of the two precepts set out in Guillory for an appellate court reviewing a trial court’s decision on a motion for a new trial under La.C.Cr.P. art. 851(5)(“ends of justice”), we find no palpable abuse of the trial court’s discretion, and Marzett has not shown that he suffered an injustice by the trial court’s denial of his motion for a new trial. The assignment of error lacks merit.

|,«CONCLUSION

We affirm the conviction and sentence of Delmon Marzett.
AFFIRMED.

. Supervisory review of the decision was sought from this court and denied. State v. Marzett, 11-1115, unpub. (La.App. 4 Cir. 8/16/11), writ denied, 11-1849 (La.9/30/11), 71 So.3d 293.

. On that date the judge tried the defendant’s misdemeanor case relating to drug paraphernalia, number 504-834, at the same time. The trial judge found Marzett guilty under La. R.S. 40:1023 and sentenced him to six months to run concurrently with the sentence in this case.

. The trial court appointed an OIPD attorney to sit in at the hearing in order to assist the defendant in representing himself.

.At the beginning of trial defense counsel informed the court that a deal had been made, but counsel wanted the defendant to talk to his parents, who were in court. Counsel noted that the state offered "a double and six....” The defendant spoke to his parents, but then rejected the plea agreement. The trial court noted that the defendant was offered “a plea bargain for a double bill and six years,” but he turned it down. The court asked Marzett on the record if he was rejecting the plea bargain, and he replied affirmatively. The defense declared that the defendant chose a jury trial.

. The record contains no affidavits from any of the purported four witnesses.

. The second basis is not mentioned on appeal.

.We note the ambiguity in this notation and absence of any indication at precisely what point it was written. That is, the notation can be a reference merely to trial strategy.

.Ibid., footnote 7.

. In Hampton, 00-0522, p. 10, 818 So.2d at 727, the Court discussed a reason that trial counsel might not cooperate and let a defendant testify. The Court noted that the district court granted Hampton post-conviction relief, and the court of appeal reversed, relying on Nix v. Whiteside, 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986). The Court found that reliance misplaced and stated:
In Nix, an ineffective assistance of counsel case, the issue was whether a criminal defendant’s Sixth Amendment right to counsel was violated when his attorney refused to cooperate after the defendant made known his intention to offer perjured testimony. Defense counsel testified:
[W]e could not allow him to [testify falsely] because that would be perjury, and as officers of the court we would be suborning perjury if we allowed him to do it ...
I advised him that if he did do that it would be my duty to advise the court of what he was doing and that I felt he was committing perjury.
Id. at 161, 106 S.Ct. 988.
*839 in the case sub judice, there was no indication the defendant wanted to perjure himself.

. The third factor from Passos-Paternina was not adopted because it employs a harmless-error analysis.

. In Hampton, 00-0522, pp. 10-11, 818 So.2d 720, 727, the Court stated:
While we believe the Constitution and jurisprudence are well-settled in that a criminal defendant is guaranteed the right to testify in his own defense, we also believe a broad-based ruling has the potential of opening the flood gates for post-conviction relief petitions in virtually every case where the defendant did not testify. Our intention is to narrow the reach of the case sub judice and prevent frivolous claims.

. We note the absence from the transcript at his trial on the narcotics charge of any notation by the court or counsel that Marzett wanted to take the stand to testify.