Judgment rendered April 8, 2026.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,787-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellant

versus

ERIC DOMINIC NABORS                         Appellee

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 13F3242-2

Honorable Larry D. Jefferson, Judge

* * * * *

ROBERT STEPHEN TEW                    Counsel for Appellant
District Attorney

HOLLY A. CHAMBERS-JONES
Assistant District Attorney


LOUISIANA APPEALS and                 Counsel for Appellee
WRIT SERVICE
By: Remy Voisin Starns
    Justin Caine Harrell


* * * * *

Before COX, ROBINSON, and MARCOTTE, JJ.

**MARCOTTE, J.**

This criminal appeal arises from the Fourth Judicial District Court, Parish of Ouachita, the Honorable Larry D. Jefferson presiding. The state of Louisiana appeals the granting of an application for post-conviction relief filed by the defendant, Eric Nabors. For the following reasons, we reverse.

**FACTS AND PROCEDURAL HISTORY**

Mr. Nabors was convicted of second-degree murder on April 10, 2017, by a unanimous jury verdict. On October 17, 2017, the trial court granted a defense motion for judgment of acquittal, finding Mr. Nabors guilty of the responsive verdict of negligent homicide instead. The trial court sentenced him to five years' imprisonment. The state challenged this action. This court reversed the trial court, reinstated the jury's verdict of second-degree murder, and remanded the case for resentencing on July 19, 2018. *State v. Nabors*, 52,163 (La. App. 2 Cir. 7/19/18), 251 So. 3d 1214, *writ denied*, 18-1477 (La. 9/12/18), 252 So. 3d 496.

The disturbing underlying facts supporting this conviction were addressed at length by this court in *Nabors, supra*, 251 So. 3d at 1216-1223, and we see no need to regurgitate them here, other than to note that the evidence at trial made clear Mr. Nabors had sole charge of the two-year-old child on the night he died, and that while in his care, the child received non-self-inflicted injuries that killed him.

Following the reinstating of the second-degree murder conviction and remand for resentencing by this court, Mr. Nabors filed a motion for a new trial on October 18, 2018. The trial court granted the motion and set the matter for trial on April 22, 2019. After the state sought supervisory review, this court granted the state's writ, reversed the granting of a new trial by the

trial court, and remanded the matter for sentencing on the second-degree murder conviction. Mr. Nabors sought writs to the Louisiana Supreme Court, which were denied on May 28, 2019. *State v. Nabors*, 19-0567 (La. 5/28/19), 274 So. 3d 560.

Mr. Nabors was sentenced to the mandatory term of life imprisonment without benefits on June 21, 2019. He was also informed of his right to seek post-conviction relief on that same date. Mr. Nabors then appealed his conviction, asserting that his sentence was constitutionally excessive. His sentence was affirmed on appeal. *State v. Nabors*, 53,357 (La. App. 2 Cir. 4/22/20), 295 So. 3d 974, *writ denied*, 20-00709 (La. 10/6/20), 302 So. 3d 527.

On June 11, 2021, Mr. Nabors filed a *pro se* memorandum in support of his post-conviction relief application. The state filed a procedural objection to his application. On December 19, 2022, Mr. Nabors filed an amended application asserting numerous claims, which he later narrowed to five: 1) he desired to waive his right to a jury trial; 2) he desired to testify at trial; 3) his counsel failed to file a motion suppressing his statements to law enforcement; 4) his counsel failed to subpoena records from the Department of Children and Family Services pertaining to the victim; and 5) his counsel failed to subpoena certain prior medical records pertaining to the victim.

Evidentiary hearings were held on July 15, 2024, and January 6, 2025, where the following evidence was adduced. At the outset, Mr. Nabors informed the court that he was waiving his attorney-client privilege as far as his communications with counsel during the trial. Mr. Nabors' lead trial counsel was Attorney Randall Donald ("Atty. Donald"), who was admitted to practice in 1984 and has since presided over "five or six" jury trials.

2

When pressed about his discussions with Mr. Nabors regarding Mr. Nabors' right to testify at trial, Atty. Donald gave the following testimony:

> I – we – I discuss that with all my clients. Again, I don't have a specific date or time that I discussed something with Mr. Nabors that I did, but it's always that you have a right to testify. No one can make you. I can't. The judge can't. DA can't. You can if you want to and I always tell them – in most cases, I advise them not to for the simple reason – and my best recollection of talking with Mr. Nabors was that I advised him not to. I didn't – and my recollection is that I didn't think he would be a good witness and I don't – and given – and I think we even talked just after the state had rested. We did have a discussion, and my best recollection is that we discussed, you know, you can – you can testify but I would definitely advise against it. And again, my reasoning was that, my recollection was that he – I didn't feel like he would be a very good witness and that I didn't, you know, given the state of the evidence that I thought in my professional opinion at that point, I thought that any testimony would not be helpful and could possibly hurt him.

Atty. Donald also stated that it is his customary practice – one that he does "religiously" – to inform his clients that they have a right to testify at trial and that they can choose not to do so. He testified that, while he had no specific recall, his best recollection was that Mr. Nabors chose not to testify based on his advice. Atty. Donald said he had concerns that Mr. Nabors would perjure himself on the stand. He further stated that if Mr. Nabors had asserted that he wanted to testify, then he would have abided by those wishes.

Attorney John Roa ("Atty. Roa") was second chair to Atty. Donald during the trial. He testified that he was at the trial "to observe, mostly, and then if [Atty. Donald] needed something, I was there to help out." Atty. Roa said that he sat next to Mr. Nabors for the entirety of the trial and was present for the discussions between Mr. Nabors and Atty. Donald after the trial court asked Atty. Donald if the defense would be presenting a case.

3

Atty. Roa said he had no recollection of Mr. Nabors requesting to testify in those discussions. Atty. Roa also said that during the 40-minute break the trial court gave counsel to prepare for closing arguments, he had no recollection of Mr. Nabors stating a desire to testify. Had Mr. Nabors said that he wanted to testify over Atty. Donald's objection, Atty. Roa said that he would have remembered such a thing.

Mr. Nabors also testified. He said that Atty. Donald started representing him in 2016, several months after he fired his previous lawyer. He claimed that he repeatedly asked Atty. Donald about his right to testify. When asked about his conversation with Atty. Donald after the state rested and the trial court inquired regarding the defense presentation, Mr. Nabors said as follows:

> When Mr. Donald turned around to me, I told him – I asked him when I was getting on the stand? He told me I don't really think that's a good idea and that's when I really just kind of like you say, left it alone because, I mean, it was the end of it. I couldn't do nothing else. Like, I kept asking him and he still wasn't doing what I asked. I didn't know I could, Your Honor, I need to get on the stand. I want to get on the stand. I didn't know I could do all that. I ain't – I was scared to talk in court. This the first time I ever talking in court anyway [sic], so, I mean, I just really didn't know.

Mr. Nabors' sister, Erin Nabors, was the last to testify. She recounted a conversation with Atty. Donald where she reiterated her brother's wish to testify. She said Atty. Donald advised that he "didn't recommend Eric to get on the stand." Ms. Nabors made no further inquiry, and no additional explanation was provided.

On January 6, 2025, the trial court took under advisement his claims regarding his waiver of a jury trial and his right to testify and denied his other claims.

On March 6, 2025, the trial court denied Mr. Nabors' claim as to his waiver of a jury trial but granted a new trial based on his claim as to his right to testify at trial. The trial court held as follows:

> And so, the court, based on the court's reading of the law and reading of the transcript and the memorandum that's been presented, I do not find as it relates to the waiver of a jury trial that the claim was established that would entitle Mr. Nabors grounds for relief. I do find that on his right to testify, that they did establish a grounds for relief in that and I based that upon the considerations that was [sic] given here in terms of it was not clear that there was an effective waiver of the right to testify at the trial.
>
> The defendant has a right to testify even though the state has argued, well, the evidence, you know, was overwhelming. Even so, that does not preclude a person from testifying at a trial. And we have an attorney making a statement that would have allowed someone to testify, which is not their – I know it's not on them to allow anybody to do anything in regards to testifying. And as the defense has argued, Mr. Donald had indicated that he didn't want the gentleman to perjure himself, but yet there was nothing to suggest any case of perjury. The jury was entitled to hear any testimony that the defendant would have given so it can take into account whether or not they would take into account any of that testimony in regards to the verdict they rendered or any other responsive verdict they may – they may have considered in the case. And therefore, that right to testify is a right that's fundamental under the constitution to individuals charged with offenses here. And like I said, it's not a question of what evidence was presented and its sufficiency, but the issue here is whether or not he was allowed to exercise that right to testify. It's not clear from the record here that I – the court did not ask, is your client going to testify? The court's statement was, Mr. Donald, and he made an assumption here that he was trying to inquire into that. But yet, there was no clear indication, he just said he was not calling any witnesses. Now, that does not indicate a clear waiver of the right of the defendant to have testified at the trial. And therefore, on that basis, as well as, like I said, the considerations here of this transcript and the testimony presented by the witnesses during the hearing, this transcript, the court grants him relief on that issue of his right to testify and orders a new trial.

The state objected and gave notice of its intent to seek writs. On July 2, 2025, this court granted the state's writ and remanded it to the trial court for perfection of a suspensive appeal. This appeal ensued.

**DISCUSSION**

*Right to Testify*

The state argues that the trial court erred in finding that Mr. Nabors' right to testify was violated at trial. There is a presumption in the law that a defendant knowingly waives his right to testify when he does not testify at trial. This presumption can only be overcome if the defendant is able to show that his attorney caused him to forgo his right to testify. The state notes that Mr. Nabors declined to testify and claims that he has not offered sufficient proof to overcome the presumption that he knowingly waived his right to testify.

The state argues that Mr. Nabors failed to present any testimony, supporting affidavits, or documentation to rebut the presumption. Rather, the state claims that Mr. Nabors has only offered uncorroborated, self-serving testimony to form the basis of his claim. The state also notes that both of Mr. Nabors' trial attorneys testified that he never voiced any objection to his not testifying.

Mr. Nabors argues that the trial court did not abuse its discretion in granting his application for post-conviction relief and ordering a new trial. He asserts that denial of a defendant's right to testify is a structural error that demands reversal of the jury's verdict. He also asserts that such a structural error is not subject to the harmless error analysis.

Mr. Nabors contends that the fact that he did not assert his right to testify at trial is not surprising, since the legal system discourages criminal

6

defendants from speaking other than through their attorney. He notes that outside of a plea colloquy – where a direct exchange is required by law – a criminal defendant "sits in virtual silence throughout his proceedings." In this case, Mr. Nabors argues that he was even more reticent to speak because he was led to believe that his counsel was responsible for any decision regarding his right to testify. He claims that he acted reasonably in relying upon his counsel's direction however much he disagreed with it.

Mr. Nabors argues that no jurisprudence supports the state's position that a criminal defendant has an affirmative obligation to announce his intention to take the stand in order to establish that his right to do so was abridged by counsel. He claims his counsel advised him that the election to testify resided exclusively with counsel and that he was even forbidden from taking the stand.

Mr. Nabors also points to the trial transcript, which does not show any on-record colloquy with him confirming that the decision not to testify was his knowing and voluntary choice. Mr. Nabors asserts that the trial court was in the best position to evaluate the credibility of the witnesses, and the trial court's judgment was not such a departure from the law and evidence so as to justify intervention and reversal by this court.

A defendant has a constitutional right to testify in his own defense. La. Const. art. I, § 16; *State v. Dauzart*, 99-3471 (La. 10/30/00), 769 So. 2d 1206. The denial of the right to testify after a criminal defendant unequivocally makes known his desire to do so is not amenable to a harmless error analysis. *State v. Hampton*, 00-0522 (La. 3/22/02), 818 So. 2d 720. However, a presumption exists that a defendant knowingly waived his right to testify when he does not testify at trial; moreover, the defendant

7

has the burden of proof to satisfy the criteria to refute that presumption. *State v. Rumley*, 14-1077 (La. App. 4 Cir. 12/16/15), 183 So. 3d 640.

In *State v. Hampton*, *supra*, the Louisiana Supreme Court adopted two criteria for determining whether a defendant's right to testify was violated or waived by his silence at trial, stating as follows:

> (1) absent extraordinary circumstances that should alert the trial court to conflict between attorney and client, the court should not inquire into a criminal defendant's right to testify. The court should assume, that a criminal defendant, by not "attempting to take the stand," has knowingly and voluntarily waived his right;

> (2) the court must consider whether the petitioner has waived his right to testify ... [The defendant can only] rebut that presumption ... by showing that his attorney caused him to forego his right to testify [(a) by alleging specific facts, including an affidavit by the defendant's trial counsel] from which the court could reasonably find that trial counsel "told [the defendant] that he was legally forbidden to testify or in some similar way compelled him to remain silent ..." [(b) by demonstrating from the record] that those "specific factual allegations would be credible..."

*Hampton, supra*, p. 14, 818 So. 2d at 729-30 (quoting *Passos-Paternina v. United States*, 12 F. Supp. 2d 231, 239-40 (D.P.R. 1998)).

Here, upon the state resting its case, the trial court inquired of Atty. Donald regarding the defense's case presentation. Atty. Donald requested time to confer with his client. After consultation, Atty. Donald asserted that "the defendant is not going to put on any evidence and rest at this time." Mr. Nabors made no objection to this assertion, nor did the trial court inquire about it any further. The trial court recessed the trial for 40 minutes to give counsel time to prepare for closing arguments. Upon resuming the trial, Mr. Nabors still made no assertion to the court of his desire to testify. Accordingly, there is an absence of extraordinary circumstances alerting the trial court to a conflict between Mr. Nabors and Atty. Donald, and, by not

8

taking the stand, Mr. Nabors is presumed to have knowingly and voluntarily waived his right to testify.

Regarding the second *Hampton* factor, we find that Mr. Nabors failed to present any testimony, supporting affidavits, and/or documentation to rebut the presumption that he knowingly waived his right to testify. Mr. Nabors only made uncorroborated, self-serving testimony to form the basis of his claim, and he was unable to demonstrate that the record would support a finding that such specific factual allegations would be credible.

Mr. Nabors' counsel, Attys. Donald and Roa, both testified that Mr. Nabors never voiced any objection to his not testifying. Atty. Donald said that he always advises his clients of their right to testify at trial and that the decision on whether to testify rests solely with the client. He further testified that whenever he has clients who desire to testify at trial, he always abides by those wishes, even when doing so is against his advice.

Rather than providing the court with specific facts indicating that his trial counsel denied him the right to testify, Mr. Nabors merely makes conclusory, unsupported allegations in his brief. Such conclusory, unsupported allegations do not suffice for this court to determine that his trial attorney legally forbade him from testifying or compelled him to remain silent. *See State v. James*, 05-2512, p. 1 (La. 9/29/06), 938 So. 2d 691 ("mere conclusory allegations are insufficient to rebut a presumption arising from a defendant's silence at trial that he waived his right to testify").

Simply put, the evidence presented by Mr. Nabors lacks the corroboration required for post-conviction relief, particularly in cases alleging structural errors such as the denial of the right to testify. Mr. Nabors testified that his counsel ignored his repeated requests to testify and

unilaterally decided he would not take the stand. However, Mr. Nabors presented no corroborating evidence to support these claims. The portion of the trial transcript reflecting the defense resting its case undermines Mr. Nabors' claim, as it contains no record of him asserting a desire to testify or objecting to Atty. Donald's decisions during the trial. Accordingly, as Mr. Nabors has provided no supporting documentation to rebut the presumption that he knowingly and voluntarily waived his right to testify, his claim that he was denied the right to testify lacks merit.

Finally, we observe that the trial court's ruling creates significant concerns. Allowing uncorroborated, self-serving testimony to form the basis of post-conviction relief undermines the integrity of final judgments, incentivizes speculative claims, and overwhelms the judicial system with unsupported allegations. Structural error claims demand a high evidentiary standard to preserve judicial stability and public confidence. By requiring adequate corroborating evidence, courts ensure that legitimate claims are addressed while preventing frivolous litigation.

## CONCLUSION

For the reasons expressed, the trial court's ruling granting Mr. Nabors' application for post-conviction relief is reversed.

**REVERSED.**